1  JOHN B. SULLIVAN (State Bar No. 96742)
   MARK D. LONERGAN (State Bar No. 143622)
2  REGINA J. McCLENDON (State Bar No. 184669)
   rjm@severson.com
3  ERIK KEMP (State Bar No. 246196)
   ek@severson.com
4  SEVERSON & WERSON
   A Professional Corporation
5  One Embarcadero Center, Suite 2600
   San Francisco, CA  94111
6  Telephone:  (415) 398-3344
   Facsimile:  (415) 956-0439
7
8  Attorneys for Defendant
   Ally Financial Inc., formerly known as
9  GMAC Inc. (incorrectly sued here as
   "General Motors Acceptance Corporation")

10                UNITED STATES DISTRICT COURT

11             SOUTHERN DISTRICT OF CALIFORNIA

12

13 RODERICK WRIGHT, individually and on        Case No. 09-cv-02666 JM-AJB
   behalf of a class of similarly situated persons,
14                                              **ALLY FINANCIAL'S MEMORANDUM
                    Plaintiff,                  OF POINTS AND AUTHORITIES IN
15                                              OPPOSITION TO PLAINTIFF'S
          vs.                                   MOTION FOR CLASS
16                                              CERTIFICATION**
   GENERAL MOTORS ACCEPTANCE
17 CORPORATION, a business entity form          Date:         January 14, 2011
   unknown, and DOES 1-50, inclusive,          Time:         1:30 p.m.
18                                              Courtroom:    16
                    Defendants.                 Judge:        Hon. Jeffrey T. Miller
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION................................................................................1

II.     STATEMENT OF FACTS ...................................................................3

    A.    Ally's Business Practices ........................................................3

    B.    Pertinent Facts Regarding Wright's Repossession ...................4

III.    CLASS CERTIFICATION STANDARDS AND BURDEN OF PROOF ......................6

IV.     WRIGHT'S CLASS DEFINITION IS AMBIGUOUS.....................................8

V.      WRIGHT IS INADEQUATE AS HE LACKS STANDING ...........................10

VI.     WRIGHT IS ATYPICAL ....................................................................13

    A.    Wright's Claim Rests on Unusual Facts ..............................13

    B.    Wright Is Subject to a Unique Defense................................14

VII.    no class should be certified under rule 23(b)(2)............................16

VIII.   INDIVIDUAL ISSUES PREDOMINATE OVER COMMON ONES UNDER RULE 23(B)(3) ...............................................................18

    A.    Whether a Customer's Contract is Even Subject to Rees-Levering Is A Predominant Individual Issue ...............................19

    B.    Causation Is a Predominant Non-Common Issue .................20

    C.    The Measure and Amount of Restitution Owed, If Any, Is an Individual Issue...........................................21

    D.    Whether the Customer Made a Voluntary Payment is an Individual Issue...........................................22

IX.     A CLASS ACTION WOULD NOT BE SUPERIOR ...................................23

X.      ALTERNATIVELY, IF A CLASS IS CERTIFIED, IT SHOULD BE SUBSTANTIALLY NARROWED ..............................................23

    A.    The Class Period is Too Long ..............................................23

    B.    Any Class Must Exclude Persons Against Whom Ally Has Obtained Judgments ......................................24

XI.     CONCLUSION .................................................................................25

1

# TABLE OF AUTHORITIES

Page(s)

2

**FEDERAL CASES**

3

*Adams v. United States*,

4

2006 WL 618293 (E.D. Cal. 2006) ...................................................................7

5

*Aiken v. Obledo*,

442 F.Supp. 628 (E.D. Cal. 1977).................................................................8

6

7

*Alaska v. Suburban Propane Gas Corp.*,

123 F.3d 1317 (9th Cir. 1997) ...................................................................15

8

*Allen v. Wright*,

9

468 U.S. 737 (1984) ...................................................................................13

10

*Amchem Prods., Inc. v. Windsor*,

521 U.S. 591 (1997) ...................................................................................18

11

*Andrews v. American Tel & Tel. Co.*

12

(11th Cir. 1996) 95 F.3d 1014 (11th Cir. 1996)........................................23

13

*Arnson v. General Motors Corp.*,

14

377 F.Supp. 209 (N.D. Ohio 1974) ...........................................................23

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,

15

222 F.3d 52 (2d Cir. 2000) ........................................................................15

16

*Bolanos v. Norwegian Cruise Lines Ltd.*,

17

212 F.R.D. 144 (S.D. N.Y. 2002) ..............................................................16

18

*Campos v. Western Dental Servs., Inc.*,

404 F.Supp.2d 1164 (N.D. Cal. 2005)........................................................23

19

20

*Castano v. Am. Tobacco Co.*,

84 F.3d 734 (5th Cir. 1996) ........................................................................8

21

*Cetacean Cmty. v. Bush*,

22

386 F.3d 1169 (9th Cir. 2004) ...................................................................11

23

*Dukes v. Wal-Mart, Inc.*,

603 F.3d 571 (9th Cir. 2010) (en banc) ...............................................16, 17

24

*Dumas v. Albers Med., Inc.*,

25

2005 WL 2172030 (W.D. Mo. 2005).........................................................19

26

*Elizabeth M. v. Montenez*,

27

458 F.3d 779 (8th Cir. 2006) .....................................................................19

28

*Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.*,
528 U.S. 167 (2000) ............................................................................................11

*Gen. Tel. Co. v. Falcon*,
457 U.S. 147 (1982) ..............................................................................................7

*Gonzalez v. Proctor & Gamble Co.*,
247 F.R.D. 616 (S.D. Cal. 2007) .........................................................................13

*Gustafson v. Polk Count, Wis.*,
226 F.R.D. 644 (W.D. Wis. 2005) ......................................................................8, 9

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir.1992) .....................................................................7, 13, 15

*Hawkins v. Comparet-Cassani*,
251 F.3d 1230 (9th Cir. 2001) ............................................................................11

*Heartland Communications v. Sprint Corp.*,
161 F.R.D. 111 (D. Kan. 1995) ...........................................................................16

*Hyderi v. Washington Mut. Bank*,
235 F.R.D. 390 (N.D. Ill. 2006) ......................................................................16, 19

*In re Graphics Processing Units Antitrust Litig.*,
253 F.R.D. 478 (N.D. Cal. 2008) .........................................................................13

*In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig.*,
201 F.R.D. 456 (D. Minn. 2001) ............................................................................8

*In re Paxil Litig.*,
218 F.R.D. 242 (C.D. Cal. 2003) .........................................................................10

*In re St. Jude Med., Inc.*,
425 F.3d 1116 (8th Cir. 2005) ..............................................................................8

*In re Tableware Antitrust Litig.*,
241 F.R.D. 644 (N.D. Cal. 2007) ......................................................................8, 19

*Jimenez v. Domino's Pizza, Inc.*,
238 F.R.D. 241 (C.D. Cal. 2006) .........................................................................19

*Maguire v. Sandy Mac, Inc.*,
145 F.R.D. 50 (D. N.J. 1992)...............................................................................23

*Mazur v. EBay, Inc.*,
257 F.R.D. 563 (N.D. Cal. 2009) ......................................................................9, 13

*Militek v. AllState Insurance Co.*,
2007 WL 7061354 (N.D. Cal. 2007) ....................................................................15

- ii -

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ...................................................................................17

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ......................................................................................8

*O'Connor v. Boeing North America, Inc.*,
    184 F.R.D. 311 (C.D. Cal. 1998) ..............................................................................8

*O'Connor v. Boeing North American Inc.*,
    197 F.R.D. 404 (C.D. Cal. 2000) ..............................................................................8

*O'Neill v. The Home Depot U.S.A., Inc.*,
    243 F.R.D. 469 (S.D. Fla. 2006) ...............................................................................9

*Oshana v. Coca-Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) ...................................................................................13

*Pagan v. Dubois*,
    884 F.Supp. 25 (D. Mass 1995) .................................................................................9

*Patterson v. Mobil Oil Corp.*,
    241 F.3d 417 (5th Cir. 2001) ...................................................................................23

*Ruiz v. Stewart Assocs., Inc.*,
    167 F.R.D. 402 (N.D. Ill. 1996) ................................................................................9

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
    211 F.3d 1228 (11th Cir. 2000) ...............................................................................19

*Schlesinger v. Reservists to Stop the War*
    418 U.S. 208 (1974) .................................................................................................11

*Shiring v. Tier Techns., Inc.*,
    244 F.R.D. 307 (E.D. Va. 2007) ..............................................................................15

*Simer v. Rios*,
    661 F.2d 655 (7th Cir. 1981) .....................................................................................8

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ...................................................................................13

*Stevens v. Harper*,
    213 F.R.D. 358 (E.D. Cal. 2002) ...............................................................................7

*Szabo v. Bridgeport Mach., Inc.*,
    249 F.3d 672 (7th Cir. 2001) .....................................................................................7

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996) ...................................................................................23

- iii -

*Vickers v. General Motors Corp.*,
    204 F.R.D. 476 (D. Kan. 2001) ........................................................................... 8

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ............................................................................. 18

*Wooden v. Bd. of Regents*,
    247 F.3d 1262 (11th Cir. 2001) ........................................................................ 11

*Yapuna v. Global Horizons Manpower Inc.*,
    254 F.R.D. 407 (E.D. Wash. 2008) ................................................................... 11

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ............................................................................. 6

**STATE CASES**

*American Oil Service v. Hope Oil Co.*,
    194 Cal.App.2d 581 (1961) ............................................................................... 22

*Buckland v. Threshold Enterprises, Ltd.*,
    155 Cal.App.4th 798 (2007) ............................................................................. 11

*Californians for Disability Rights v. Mervyn's, LLC*,
    39 Cal.4th 223 (2006) ....................................................................................... 11

*Cohen v. DirecTV, Inc.*,
    178 Cal.App.4th 966 (2009) ....................................................................... 20, 21

*Colgan v. Leatherman Tool Group, Inc.*,
    135 Cal.App.4th 663 (2006) ............................................................................. 22

*Daro v. Superior Court*,
    151 Cal.App.4th 1079 (2007) ........................................................................... 12

*Day v. AT&T Corp.*,
    63 Cal.App.4th 325 (1998) ............................................................................... 22

*Fletcher v. Security Pacific National Bank*,
    23 Cal.3d 442 (1979) ........................................................................................ 23

*Foxx v. Williams*,
    244 Cal.App.2d 223 (1966) ............................................................................... 22

*Hall v. Time Inc.*,
    158 Cal.App.4th 847 (2008) ....................................................................... 11, 12

*In re Fireside Bank Cases*,
    187 Cal.App.4th 1120 (2010) ..................................................................... 12, 25

- iv -

*In re Tobacco II Cases*,
   46 Cal.4th 298 (2009) ................................................................................. 11, 21

*In re Vioxx Class Cases*,
   180 Cal.App.4th 116 (2009) ............................................................................... 22

*Jordan v. Paul Financial*,
   2009 WL 192888 ................................................................................................ 15

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134 (2003) ...................................................................................... 20

*Quezada v. Loan Center of Cal., Inc.*,
   2009 WL 5113506 .............................................................................................. 15

*Steinman v. Malamed*,
   185 Cal.App.4th 1550 (2010) .............................................................. 15, 16, 22

*The Texas Company v. Todd*,
   19 Cal.App.2d 174 (1937) .................................................................................. 15

*Western Gulf Oil Co. v. Title Ins. & Tr. Co.*,
   92 Cal.App.2d 257 (1949) .................................................................................. 15

**FEDERAL RULES**

Fed Rules of Civil Procedure
   Rule 23(a) ................................................................................... 1, 2, 6, 7, 16
   Rule 23 ............................................................................................... 7, 8, 9
   Rule 23(a)(2) ........................................................................................... 18
   Rule 23(a)(4) ........................................................................................... 10
   Rule 23(b) ..................................................................................... 6, 7, 16
   Rule 23(b)(2) ...................................................................................... passim
   Rule 23(b)(3) ............................................................................... 6, 7, 8, 18

**STATE STATUTES**

Bus. & Prof. Code,
   § 17200 *et seq.* ...................................................................................... 2
   § 17204 ................................................................................................... 11

California Civil Code
   § 1717 .................................................................................................... 23
   § 2981(a), (k) ......................................................................................... 10
   § 2983.2(a) ............................................................................................... 9
   § 2983.2(a)(2) and (3) ........................................................................ 4, 13
   § 2983.8 ............................................................................................ 23, 25

- v -

**OTHER AUTHORITIES**

7AA Wright, Miller & Kane, *Federal Practice & Procedure*, § 1785 (3d ed. 2005) .................. 19

07462/0327/868753.2

ALLY FINANCIAL'S MEMORANDUM IN OPPOSITION
Case 09-cv-02666 JM-AJB

# I.   INTRODUCTION

Plaintiff Roderick Wright has not borne his burden of showing class certification is appropriate.  Wright has not proven he can satisfy the adequacy or typicality requirements of Fed R. Civ. P. Rule 23(a).  Wright also has not proven he can satisfy either subsection (b)(2) or (b)(3).  His motion should be denied.

The motion is defective at the outset because Wright's class definition is ambiguous.  This is one in a series of putative class actions filed over the last dozen years challenging creditors' post-repossession notices ("NOIs") under California's Rees-Levering Act, Cal. Civ. Code, § 2981 *et seq.*  Wright apparently believes that if Ally Financial sent a customer an NOI, the customer's contract is necessarily subject to Rees-Levering.  That is wrong.  Whether the Act applies is an individual issue that cannot be determined from Ally's records.  Wright, as the proponent of class certification, bears the burden of proving the Act's application for each putative class member.  Insofar as Wright attempts to divest himself of that burden by incorporating within his definition a factual finding that the Act applies to each class member, it is defective.

Wright is an inadequate representative as he lacks standing.  Wright suffered no injury in fact as a result of the alleged hypertechnical defects in his NOI.  He testified he did not receive his NOI until after his deadline to reinstate his contact had expired, and thus could not have been misled by the NOI's purported failure to disclose "all the conditions precedent" to reinstatement.  Nor was Wright injured by the NOI's omission of a physical address where he could personally submit a request for an extension because, again, that deadline already expired and, for that reason, Wright never requested an extension.

Wright suffered no other injury in fact.  He made a token $25 payment on a deficiency in excess of $9,000.  Four days later, he filed this suit asking for the payment back.  Wright, like several of his NOI predecessors, made the nominal payment solely to facilitate standing for this suit, not as a result of any defect in Ally's NOI.

Wright is also atypical.  Wright's claim rests on unusual facts because he did not receive the NOI until after his right to reinstate had expired and he lacked the financial means to reinstate anyway.  Wright is also subject to a unique defense, California's Voluntary Payment Doctrine,

1   which will be a primary focus of this litigation.  Wright made his nominal $25 payment even

2   though he disputed that he owed the deficiency and disputed the amounts of various charges.

3   Having made the payment with full knowledge of the facts, Wright cannot now seek to recover it

4   on the ground that the demand for payment was illegal.

5        Even if Wright had satisfied all the essential elements of Rule 23(a), he cannot satisfy

6   Rule 23(b)(2) or 23(b)(3).

7        Certification under subsection (b)(2) is plainly inappropriate.  Wright seeks substantial

8   monetary relief—restitution of all deficiency payments, plus interest and disgorgement of

9   profits—that predominates over any injunctive relief.  Apart from the substantial amount of

10  money at issue, approximately $8 million, calculating the amount of restitution owed raises

11  individual questions that create significant manageability issues.  By contrast, waiver of class

12  members' deficiencies offers little practical benefit to class members, as most class members

13  have never paid and will never pay anything anyway.

14       Certification under subsection (b)(3) would also be inappropriate.  As experience from a

15  prior NOI class action shows, individual issues predominate over any common ones.  It would

16  require an individual evaluation of the circumstances surrounding each customer's vehicle

17  purchase just to determine whether the Rees-Levering Act applies.  Proving Ally's allegedly

18  defective NOIs caused any customer to suffer harm, a prerequisite to either restitution of

19  injunctive relief under California Unfair Competition Law, Cal. Bus. & Prof. Code, § 17200 *et*

20  *seq.*, is also an individual question.  Wright concedes that the amount of restitution owed, if any,

21  is an individual question.  And, whether any customer's claim is, like Wright's, barred by the

22  Voluntary Payment Doctrine is necessarily an individual question because it turns on the payor's

23  subjective state of mind.

24       A class action would not be superior because adequate individual remedies exist.

25  Customers may raise Ally's purported noncompliance with Rees-Levering as a defense in any

26  deficiency action and, if successful, potentially recover their attorneys' fees.

27       If the Court were otherwise inclined to certify a class, it should be substantially narrower

28  than one Wright proposes.  Any class should terminate as of December 2009, when Ally

- 2 -

1   implemented a new version of its NOI that Wright did not receive.  Wright did not suffer any

2   injury as a result of the sole defect he attributes to that newer NOI.  The class should also exclude

3   persons against whom Ally obtained deficiency judgments, who are barred under the doctrine of

4   *res judicata* from seeking to recover from Ally here.

## II.   STATEMENT OF FACTS

### A.   Ally's Business Practices

7   Ally is in the business of indirect financing of motor vehicles—i.e., purchasing retail

8   installment contracts from dealerships and then servicing the accounts.  Kemp Decl., Ex. D

9   [19:15-20:19], Ex. E [10-4-13:5, 15:1-16:7].  Ally finances consumer, nonconsumer, and

10  commercial fleet accounts.  *Id.*, Ex. D [20:20-21:1, 33:8-37:6], Ex. E [35:15-36:9].

11  When Ally purchases a contract from a dealer, it designates the contract in its records as

12  being for either business or personal use based upon the notation on the contract that is completed

13  by the dealer.  *Id.*  In designating a contract as being for business or personal use, Ally relies

14  exclusively on the information provided by the dealer on the face of the contract.  Salinas-Diaz

15  Decl., ¶¶ 2-3.  Ally does not conduct any independent investigation into the reason for the

16  customer's purchase.  Salinas-Diaz Decl., ¶3.

17  If a California customer defaults and his vehicle is repossessed, Ally sends him a notice of

18  intent to dispose of motor vehicle that informs him of his right to reinstate the contract, if

19  applicable, and right to redeem the vehicle.  Kemp Decl., Ex. D [9:17-18:7, 55:21-58-6, Ex. 2-4];

20  Brewer Decl., Ex. A.  Ally sends the notice to all customers whose contracts were designated as

21  being for personal use but does not conduct any investigation into the customer's actual use of the

22  car.  Salinas-Diaz Decl., ¶¶ 3-4.

23  California customers are provided twenty days after mailing of the notice to reinstate or

24  redeem.  Kemp Decl., Ex. D [9:17-18:7, 55:21-58-6, Ex. 2-4]; Brewer Decl., Ex. A.  Customers

25  may also request a ten-day extension by mailing a form attached to the NOI to a post office box

26  disclosed on the NOI or, alternatively, by overnight delivery or fax to locations Ally would

27  provide upon request.  Kemp Decl., Ex. D [42:5-43-14].

28

- 3 -

1    Ally has used three different form NOIs since October 2005.  Kemp Decl., Ex. D [9:17-
2    18:7, Ex. 2-4]; Brewer Decl., Ex. A.

3    Ally used the first form of NOI between 2005 and December 2009.  Kemp Decl., Ex. D
4    [9:17-18:7, Ex. 2-4]; Brewer Decl., Ex. A.  This is the form of NOI that Wright received.  Kemp
5    Decl., Ex. D [18:13-25, Ex. 6].  Wright contends that the NOI violates Civil Code section
6    2983.2(a)(2) because it allegedly failed to disclose "all the conditions precedent" to reinstatement.
7    *See* Mem., 2:8-3:2, 5:15-7:7.  Wright also contends that the NOI violates Civil Code section
8    2983.2(a)(3) because the NOI's extension request form does not disclose a physical location where
9    the extension form could be personally served.  *See* Mem., 3:3-10, 7:10-22.

10    Ally used the second form of NOI between December 2009 and August 23, 2010, and the
11    third form of NOI from August 23rd to at least October 13, 2010.  Kemp Decl., Ex. D [9:17-18:7,
12    Ex. 2-4]; Brewer Decl., Ex. A.  Wright does not contend either the second or third forms violate
13    Civil Code section 2983.2(a)(2).  Rather, he contends only that NOIs violated Civil Code section
14    2983.2(a)(3) because they do not disclose a physical office where the extension request form can
15    be personally served.  *See* Mem., 3:11-14, 7:10-22.  He seeks to certify a class of persons whom
16    received those NOIs and allege that violation.  *Id.*

17    **B.    Pertinent Facts Regarding Wright's Repossession**

18    In April 2007, Wright purchased a 2006 Pontiac GTO from Dutton Motor, a dealership in
19    Riverside, California.  Kemp Decl., Ex. C [9:7-19, 12:4-18, Ex. 1].  The dealership arranged for
20    financing, entering into a retail installment contract with Wright.  *Id.*  The contract was later
21    assigned to Ally's predecessor.  *Id.*, Ex. C [16:3-9].

22    Wright purchased the vehicle primarily to enter it in competitive car shows, a hobby of
23    his.  *Id.*, Ex. C [58:17-61:2, 80:22-81:8].  Wright used a different vehicle for everyday use.  *Id.*

24    The contract required Wright to make monthly payments of $598.28 for 60 months.
25    Kemp Decl., Ex. C [14:4-12, Ex. 1].  It further provided that Wright would be liable for the entire
26    amount due even if the vehicle were later repossessed.  *Id.*  Wright understood these terms.  *Id.*

27    In March 2009, Wright fell delinquent on the contract.  *Id.*, Ex. C [16:10-17:12].  Wright
28    contends that he thereafter entered into an oral agreement with one Ally employee to make half of

- 4 -

1   his monthly payment twice a month until August 20, 2010, at which point Wright would be

2   responsible for curing the entire default.  *Id.*, Ex. C [17:16-21:23].  Wright contends that a

3   different Ally employee thereafter advised there was no such agreement and that he would have

4   to tender the entire amount owed if he wanted to avoid repossession.  *Id.*, Ex. C [21:24-26:23].

5          Wright's vehicle was ultimately repossessed in July 2009.  *Id.*, Ex. C [26:24-28:5, 45:9-

6   46:14, Ex. 6].  Wright contends the repossession agent improperly towed the vehicle away, rather

7   than placing it on a flatbed, thus causing damage to the vehicle.  *Id.,* Ex. C [28:4-30:18].  Wright

8   contacted the Bickel Law Firm, which was representing him in a separate suit, and advised Ally

9   he was consulting with an attorney about the repossession.  *Id.*, Ex. C [32:21-33:22, 35:15-19].

10         On July 17, 2009, Ally sent Wright a notice of intent to dispose of motor vehicle, which

11   advised Wright he had the right to reinstate his contract by paying the delinquent charges and

12   reasonable expenses or redeem the vehicle by paying the entire contract balance.  *Id.*, Ex. C

13   [45:1-12, 45:19-46:14, Ex. 6].  Wright understood that NOI gave him the right to reinstate his

14   contract or redeem his vehicle.  *Id.*, Ex. C [49:16-50:13].

15         Wright contends, however, that he did not receive the NOI until at least August 7, 2009,

16   after the 20-day redemption and reinstatement periods had expired.  *Id.*, Ex. C [55:16-56:9].  The

17   NOI included an extension form that Wright could return to Ally to request an additional 10 days

18   to reinstate or redeem.  *Id.*, Ex. C [55:16-56:9, Ex. 6].  Wright understood he had this right, but

19   never returned the form to Ally because, again, he believed his deadline to do so had expired by

20   the time he received the NOI.  *Id.*

21         Although his right to reinstate or redeem had already expired by the time he ostensibly

22   received the NOI, Wright also contends, contradicting himself, that he attempted to contact Ally

23   to find out the amount required to reinstate.  *Id.*, Ex. C [44:8-45:6].  The NOI disclosed that the

24   amount required to reinstate was $2,262.04.  *Id.*, Ex. C [50:5-51:2, Ex. 6].  Wright never

25   attempted to pay that sum, or any sum, to Ally.  *Id.*, Ex. C [51:3-53:12].

26         While Wright's personal financial situation had not changed since his default, he claims

27   that his girlfriend received $20,000 from her son for an unknown reason.  *Id.*, Ex. C [50:10-51:2].

28   Wright contends that Ally was unable to provide him the amounts owed to third parties like the

- 5 -

1  repossession company or police department, though he admits that he was aware of how to

2  contact those third parties and made no attempt to do so.   *Id.*, Ex. C [45:7-49:15, 51:3-53:12].

3       Wright's vehicle was subsequently sold at auction on October 1, 2009.  *Id.*, Ex. C [56:13-

4  57:15, Ex. 7].   On October 7, 2009, Ally sent Wright a letter advising he owed a deficiency in the

5  amount of $9,694.43, and explaining how that deficiency was calculated.  *Id.*

6       However, at the time Wright received the letter, he did not believe he owed Ally any

7  deficiency as a result of his alleged difficulties in attempting to reinstate.   *Id.*, Ex. C [56:25-58:5,

8  61:3-14, 62:10-64:8].   Wright also disputed or questioned a number of the figures and charges in

9  the letter, including the price the vehicle fetched at auction, the storage and reconditioning

10 charges, and the rebate for unearned insurance premiums.  *Id.*, Ex. C [57:16-58:23, 61:3-20].

11      As a result of these concerns, Wright began looking for an attorney to represent him.  *Id.*,

12 Ex. C [62:10-64:8].  Wright spoke to Hawk Barry, an attorney who had represented him in

13 another prior lawsuit, in September 2009.  *Id.*, Ex. C [35:15-37:7, 74:23-75:23].  Barry referred

14 Wright to his current attorneys.  *Id.*, Ex. C [35:15-38:12].

15      Despite his concerns about Ally's conduct when he attempted to reinstate, Wright then

16 made a payment in the amount of $25 on his deficiency in excess of $9,000 on October 16, 2009.

17 *Id.*, Ex. C [64:9-67:2, Ex. 8].  Wright says he made the payment solely because Ally claimed he

18 owed the deficiency.  *Id.*; Wright Decl., ¶ 8.   Four days later, all on October 20th, Wright

19 contacted his current attorney, retained him, and filed this action.  Kemp Decl., Ex. A, B

20 [Interrogatory No. 5], Ex. C [35:15-38:12, 67:23-68:6]; Wright Decl., ¶ 9.  Wright now seeks to

21 recover the $25 payment he made just four days prior to filing suit to recover it.  Kemp Decl., Ex.

22 C [68:7-23].

23          **III.    CLASS CERTIFICATION STANDARDS AND BURDEN OF PROOF**

24      "As the party seeking class certification, [Wright] bears the burden of demonstrating that

25 [he] has met each of the four requirements of Rule 23(a) and at least one of the requirements of

26 Rule 23(b)."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule 23(a)

27 requires Wright to establish numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P.

28 23(a).

1    Wright seeks certification under Rule 23(b)(2) or, alternatively, Rule 23(b)(3).  The former

2    requires that Wright prove "the party opposing the class has acted or refused to act on grounds that

3    apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

4    appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The latter requires that he

5    prove "that the questions of law or fact common to class members predominate over any questions

6    affecting only individual members, and that a class action is superior to other available methods for

7    fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

8    A class action "may only be certified if the trial court is satisfied, after a rigorous analysis,

9    that the prerequisite of Rule 23(a) have been satisfied."  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161

10   (1982).  While the complaint's allegations are generally accepted as true for certification purposes,

11   "sometimes it may be necessary for the court to probe beyond the pleadings before coming to rest

12   on the certification question …. [A]ctual, not presumed, conformance with Rule 23(a) remains …

13   indispensable."  *Id.* at 160.  Thus, the Ninth Circuit has recognized that a district court is not only

14   "at liberty to" but *must* "consider evidence which goes to the requirements of Rule 23 [at the class

15   certification stage] even [if] the evidence may also relate to the underlying merits of the case."

16   *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir.1992).

17   "That is equally true of Rule 23(b).  Certifying classes on the basis of incontestable allega-

18   tions in the complaint moves the court's discretion to the plaintiff's attorneys—who may use it in

19   ways injurious to other class members, as well as ways injurious to defendants."  *Szabo v.*

20   *Bridgeport Mach., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001).  Thus, Wright " 'must provide more

21   than bare allegations that [he] satisfy[ies] the requirements of Rule 23 for class certification.' "[1]

22   To meet his burden of proving that this case satisfies Rule 23's requirements, Wright must

23   clearly explain the theory of liability he proposes to pursue on the class' behalf.  While the Court

24   should not adjudicate the merits of Wright's claims, "a court must understand the claims, defenses,

25   relevant facts, and applicable substantive law in order to make a meaningful determination of the

26

27   _____

[1] *Stevens v. Harper*, 213 F.R.D. 358, 378 (E.D. Cal. 2002) (*quoting Morrison v. Booth*,
763 F.2d 1366, 1371 (11th Cir. 1985)); *accord: Adams v. United States*, 2006 WL 618293, at *1

28   (E.D. Cal. 2006).

- 7 -

1  [class] certification issues."[2]

2     The legal theory largely determines whether the case satisfies Rule 23(b)(3) requirements.[3]

3  "If proof of the essential elements of the cause of action requires individual treatment, then class

4  certification is unsuitable."  *Newton,* 259 F.3d at 172.

5              **IV.   WRIGHT'S CLASS DEFINITION IS AMBIGUOUS**

6     The motion is defective at the outset because Wright's proposed class definition is

7  ambiguous.  As Wright acknowledges (*see* Mem., 9:8-17), though not expressly mentioned by

8  Rule 23, the first prerequisite of any class action is that there be an ascertainable class.[4]

9     "The class definition is of critical importance because it identifies the persons (1) entitled

10  to relief, (2) bound by the judgment, and (3) entitled to notice in a Rule 23(b)(3) action."  *Vickers*

11  *v. General Motors Corp.*, 204 F.R.D. 476, 477 (D. Kan. 2001) (internal quotation marks and

12  citations omitted).   The ascertainability requirement "will not be deemed satisfied unless the

13  description of [the class] is sufficiently definite so that it is administratively feasible for the court

14  to determine whether an individual is a member."  *Aiken v. Obledo*, 442 F.Supp. 628, 658 (E.D.

15  Cal. 1977).  A class definition that is overly broad or ambiguous is a ground for denying class

16  certification independent of Rule 23.[5]

17     Wright proposes to certify the following class:

18  ───────────────────────

19     [2] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996); *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001) ("A class certification

20  decision requires a thorough examination of the factual and legal allegations."); *O'Connor v. Boeing North American Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000) ("a court reviewing a certification motion is 'required to consider the nature and range of proof necessary to establish [the] allegations

21  in the complaint.").

22     [3] *In re Lutheran Bhd. Variable Ins. Prod. Co. Sales Practices Litig.*, 201 F.R.D. 456, 460 (D. Minn. 2001), disapproved on other grounds, *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1121

23  (8th Cir. 2005) ("In order to determine whether Rule 23(b)(3) is met in this case, the Court must consider the specific legal theories on which Plaintiffs' lawsuit is based.").

24
     [4] *Simer v. Rios*, 661 F.2d 655, 669-70 (7th Cir. 1981); *In re Tableware Antitrust Litig.*,
25  241 F.R.D. 644, 650 (N.D. Cal. 2007); *Gustafson v. Polk Count, Wis.*, 226 F.R.D. 644, 650 (W.D. Wis. 2005) *O'Connor v. Boeing North America, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

26
     [5] *E.g., Mazur v. EBay, Inc.*, 257 F.R.D. 563, 567-68 (N.D. Cal. 2009); *O'Neill v. The*
27  *Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 477-78 (S.D. Fla. 2006); *Gustafson*, 226 F.R.D. at 650; *Ruiz v. Stewart Assocs., Inc.*, 167 F.R.D. 402, 404-05 (N.D. Ill. 1996); *Pagan v. Dubois*, 884

28  F.Supp. 25, 27-28 (D. Mass 1995).

- 8 -

1
2
3
4

> All California residents to whom GMAC sent notices of intent to sell (NOIs) during the period beginning October 23, 2005 to the date of class certification, whose vehicles were repossessed or voluntarily surrendered to GMAC or its agents, and against whom GMAC has asserted a deficiency claim.  The Class excludes all employees of GMAC and its affiliates, and all persons whose conditional sale contract obligations have been discharged in bankruptcy.

5   *See* Notice of Motion, 1-2.

6        The problem with Wright's definition is that it is uncertain.  Although the definition does

7   not mention the Rees-Levering Act, Wright argues in his memorandum that all persons who fall

8   within this definition have a contract subject to the Act, and that Ally can make that determination

9   from its records. *See* Mem., 12:1-9. Wright's theory is apparently that if an NOI was sent to a

10  customer, that customer's contract is necessarily subject to Rees-Levering.

11       Wright is wrong.  It is not administratively feasible for Ally to determine whether the

12  Rees-Levering Act applies from its records nor can that determination be made through an

13  automated search of its records.  That determination is an individual issue and one on which

14  Wright, as the proponent of class certification, bears the burden of proof.  Insofar as Wright

15  attempts to incorporate into his class definition a factual finding that the Act applies to each class

16  member, he improperly attempts to divest himself of the burden of proving an essential element

17  of his claim, thus rendering the class definition defective.

18       This is no mere matter of semantics.  The fundamental prerequisite of Wright's claim is

19  that the contract be subject to Rees-Levering.  Wright's theory is that Ally failed to send him and

20  the putative class NOIs that complied with the Rees-Levering Act, particularly Civil Code section

21  2983.2(a).  (Compl.,, ¶¶ 8, 9, 20, 26.)  Thus, as a threshold matter, the customer's contract must

22  be subject to the Rees-Levering Act.  Otherwise, he is not entitled to receive an NOI and has no

23  claim against Ally even if he were sent a noncompliant NOI.

24       The Rees-Levering Act applies only to "conditional sale contracts" for the sale of a

25  "motor vehicle," a defined term meaning "any vehicle required to be registered under the Vehicle

26  Code which is bought for use primarily for personal or family purposes, and does not mean any

27  vehicle which is bought for use primarily for business or commercial purposes."  Cal. Civ. Code,

28  § 2981(a), (k).

- 9 -

1   Contrary to Wright's argument, Ally cannot determine from its records whether any

2   customer's contract is subject to the Rees-Levering Act.  While Ally codes the account as being for

3   personal or business use upon assignment of the contract, that designation is based solely on

4   information provided by the dealership on the face of the contract.  Ally has no knowledge of

5   whether any customer actually intended to use the vehicle for personal or business purposes.  That is

6   why it is Ally's policy to send an NOI to each customer whose contract was marked with the

7   personal use notation.

8   Sometimes that notation is wrong.  A review of Ally's records has revealed obviously

9   improper designations of personal use contracts in at least several hundred instances—such as

10  contracts obtained by SM&S Management, Lindquist Construction Inc., Nationwide Capital Invest-

11  ments LLC, Talkington Trucking Company, Rock Solid Development Inc., and Mortgage Plus Inc.

12  Salinas-Diaz Decl., ¶6, Exs. A-F.  In other cases, the error might not be so obvious.  A building

13  contractor, for example, might purchase a pickup truck in his own name but still use it primarily for

14  his business.

15  As the above examples demonstrate, and as explained more fully below, there is no way to

16  determine the actual purpose for which the vehicle was purchased without conducting an

17  individual review of files and ultimately asking the consumer individually.  Insofar as Wright is

18  attempting to incorporate within the class definition a finding that the statute applies, the class is

19  not ascertainable and the definition defective.

20  ## V.   WRIGHT IS INADEQUATE AS HE LACKS STANDING

21  Rule 23(a)(4)'s adequacy requirement ensures that absent class members' interests are

22  protected by assuring that the named class representative's interests do not conflict with class

23  members' and that the representative will vigorously prosecute the action on the class' behalf. *In re*

24  *Paxil Litig.*, 218 F.R.D. 242, 247 (C.D. Cal. 2003).  "[J]ust as a plaintiff cannot pursue an individual

25  claim unless he proves standing, a plaintiff cannot represent a class unless he has standing to raise

26

27

28

- 10 -

1   the claims of the class he seeks to represent."[6]  "To have standing to sue as a class representative it

2   is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and

3   suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists*

4   *to Stop the War* 418 U.S. 208, 216 (1974).

5          Since the passage of Proposition 64, a plaintiff has standing to bring a UCL claim only if

6   he has (1) "suffered injury in fact" *and* (2) "lost money or property *as a result of*" the unfair

7   competition he challenges.[7]  "The phrase 'as a result' in its plain and ordinary sense means

8   'caused by' …."  In other words, Proposition 64 "imposes a causation requirement."  *Hall v. Time*

9   *Inc.,* 158 Cal.App.4th 847, 855 (2008).  To have standing under the UCL, a plaintiff must show

10  that the unfair competition he attacks was a substantial factor in causing him to lose money or

11  property.  *In re Tobacco II Cases*, 46 Cal.4th 298, 326-27 (2009).

12         "Injury in fact" under the UCL and Article III means "an actual or imminent invasion of a

13  legally protected interest, in contrast to an invasion that is conjectural or hypothetical."[8]  A

14  purported injury incurred solely to "establish standing for litigation" under the UCL "does not

15  constitute the requisite injury in fact; to hold otherwise would gut the 'injury in fact' requirement."

16  *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal.App.4th 798, 815-16 (2007).

17         Wright suffered no actual injury.  He made a nominal payment of $25 on a deficiency in

18  excess of $9,000 on the eve of filing this action.  He did not believe he owed Ally any money at

19  the time he received the explanation of deficiency letter dated October 7th.  He had been speaking

20  to attorneys about his rights since the car was repossessed in July.  Yet, he made the token

21  payment on October 16th anyway and then filed suit just four days later seeking to get it back.

22         While this may seem like odd, inconsistent behavior, it is nothing unusual for Wright's

23

24         [6] *Wooden v. Bd. of Regents*, 247 F.3d 1262, 1288 (11th Cir. 2001); *accord:  Hawkins v.*
    *Comparet-Cassani,* 251 F.3d 1230, 1238 (9th Cir. 2001); *Yapuna v. Global Horizons Manpower*
25  *Inc.,* 254 F.R.D. 407, 412 (E.D. Wash. 2008).

26         [7] *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223, 227 (2006); Bus. &
    Prof. Code, § 17204.
27

28         [8] *Hall*, 158 Cal.App.4th at 855; *Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc.*,
    528 U.S. 167, 180-181 (2000); *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

1   counsel.  Wright's attorneys, and their prior firm, consistently represent plaintiffs or cross-

2   complainants in NOI class actions who make token payments on substantial deficiencies—

3   presumably on the advice of counsel—days before filing suit.  Kemp Decl., Exs. F-O.  Based upon

4   these nominal payments, the plaintiffs, like Wright, allege they have suffered "injury in fact" "as a

5   result of" the creditor's NOI and seek restitution under the UCL for themselves and putative class.[9]

6   Such manufactured harm is insufficient to constitute an injury in fact for the reason just explained.

7       Even if Wright's nominal payment constituted injury, "[Wright] nonetheless would fail to

8   satisfy the second prong of the standing test—that [he]'lost money or property as a result' of the

9   alleged unfair competition …"  *Hall*, 158 Cal.App.4th at 855.  "[T]here must be a causal

10  connection between the harm suffered and the unlawful business activity. That causal connection

11  is broken when a complaining party would suffer the same harm whether or not a defendant

12  complied with the law."  *Daro v. Superior Court*, 151 Cal.App.4th 1079, 1099 (2007).

13      Wright suffered no injury as a result of the defects he challenges in the NOI.  He contends

14  he did not receive the NOI until after his deadline to reinstate had expired, and thus could not

15  have been injured by the NOI's purported failure to disclose "all the conditions precedent" to

16  exercise of that right.  For the same reason, Wright suffered no injury as a result of the NOI's

17  omission of a physical address to serve the request for extension, as he made no attempt to

18  request an extension because he believed that right had already terminated. And, Wright's token

19  payment plainly was not suffered as a result of any defect in the NOI.   In Article III terms,

20

21       [9] For example, in *Fireside Bank Cases*, JCCP Case No. 4524, Superior Court of Santa
    Clara County, cross-complainant Patricia Lind made a $50 payment on her deficiency on
22  October 23, 2007.  (Kemp Decl., Exs. F-G.)  Six days later, on October 29, 2007, she filed a
    putative class action cross-complaint seeking to get the payment back.  (RJN, Ex. B.)  In *Ford
23  Motor Company LLC v. Timothy O'Neal*, cross-complainant Timothy O'Neal made a $50 payment
    on his deficiency on January 15, 2008.  (Kemp Decl., Ex. H.)  Eight days later, on January 23, 2008,
24  he filed a putative class action cross-complaint seeking to get the payment back.  (RJN, Ex. C.)  In
    *DaimlerChrysler Financial Services Americas LLC  v. Pryer*, cross-complainant Erik Pryer made a
25  $25 payment on his deficiency on August 27, 2007 (the payment was later returned by his bank for
    insufficient funds).  (Kemp Decl., Exs. J-M.)  Two days later, on August 29, 2007, he filed a
26  putative class action cross-complaint seeking to get the payment back.  (RJN, Ex. D.)  In
    *Richardson v. Wells Fargo Bank, N.A.*, plaintiff Calletano Rueda made a $50 payment on his
27  deficiency on April 21, 2009.  (Kemp Decl., Exs. N-O.)  On April 23, 2009, a second amended
    complaint was filed adding Rueda as a class representative and seeking to get the payment back.
28  (RJN, Ex. E.)

- 12 -

1  Wright cannot show that his "personal injury [is] fairly traceable to [Ally's] allegedly unlawful

2  conduct."  *Allen v. Wright*, 468 U.S. 737, 751 (1984).

3        In short, Wright lacks standing to challenge the business practices of which he complains.

4  He is thus an inadequate representative, and certification should be denied.

5                              **VI.    WRIGHT IS ATYPICAL**

6        "The test of typicality 'is whether other members have the same or similar injury, whether

7  the action is based on conduct which is not unique to the named plaintiffs, and whether other class

8  members have been injured by the same course of conduct.' "  *Hanon*, 976 F.2d 497 at 508 (citations

9  omitted).  In the absence of typicality, "[a] named plaintiff who proved his own claim would not

10  necessarily have proved anyone else's claim."  *Sprague v. General Motors Corp.*, 133 F.3d 388, 399

11  (6th Cir. 1998).  Wright is atypical for several reasons.

12        **A.     Wright's Claim Rests on Unusual Facts**

13        Typicality is lacking where the named representative's claims differ in critical ways from

14  those of the putative class.[10]  That is the case here.

15        First, Wright testified he did not receive the NOI until after the reinstatement period had

16  expired.  Thus, unlike the persons whom he seeks to represent, he was not affected by whether the

17  NOI disclosed all the conditions precedent to reinstatement, as required by Civil Code section

18  2983.2(a)(2), or whether the NOI disclosed a physical address to personally serve a request for an

19  extension, as his counsel say is required by Civil Code section 2983.2(a)(3).[11]  The right to reinstate

20  and the right to request an extension to reinstate had expired by the time he received the NOI.

21

22        [10] *E.g., Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006); *Mazur*, 257 F.R.D.
   at 568-69; *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 489-90 (N.D. Cal.
23   2008); *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 621-22 (S.D. Cal. 2007) .

24        [11] While Wright's section 2983.2(a)(2) claim is dubious, Wright's section 2983.2(a)(3)
   claim is flyspecking at its worst.  Nowhere does the statute require a creditor to provide a physical
25   address on the request for extension form or guarantee a consumer the right to personally serve
   the form.  Rather, the NOI need only inform the customer that he must return the form by
26   certified mail, return receipt requested or personal service "to a person or office and address
   designated by the seller or holder."  Cal. Civ. Code, § 2983.2(a)(3).  The creditor need not
27   designate a physical address nor afford personal service as an option—the latter of which would
   be cost-prohibitive for most consumers whose vehicles were repossessed anyway, particularly
28   where, as here, the creditor maintains no California office.

1    Second, there is considerable doubt that any defect in the NOI would have prejudiced

2    Wright even had he received it before the reinstatement period expired.  Wright admits he

3    defaulted in May 2009.  He does not contend that his personal financial situation changed by the

4    time he received the NOI in August 2009, but only that his girlfriend's son gave her

5    approximately $20,000 for an unknown reason. Wright had no knowledge of the reason for the

6    gift or its intended use.  Accordingly, it is, at the very least, doubtful that Wright would have had

7    the means to reinstate in August 2009.  Ally intends to show at trial that Wright could not have

8    afforded to reinstate and, hence, suffered no injury as a result of any technical defect in the NOI.

9    Third, Wright's token payment four days before filing this action is dubious for all the

10   reasons explained above.  Ally believes, and intends to prove at trial, that the $25 payment was

11   made on the advice of his counsel solely to manufacture an "injury" for this litigation.  Ally will

12   show that Wright's so-called injury is atypical of the class he purports to represent—i.e., persons

13   who were allegedly misled by the supposed defects in Ally's NOI.

14   Finally, even the circumstances surrounding Wright's default and repossession are

15   unusual.  Wright contends one Ally employee breached an oral agreement he had with another

16   Ally employee to make partial payments until he cured his default.  Wright also contends that the

17   repossession agent damaged the vehicle during the repossession.  Most customers, by contrast, do

18   not contest their default or the repossession.  Sorting through the peculiar facts of Wright's

19   default and repossession will consume further time and distract from the class issues.

20   In short, Wright's claim is premised on unusual facts.  His claim lacks the essential

21   characteristics of the class he seeks to represent, thus rendering him atypical.

22   **B.      Wright Is Subject to a Unique Defense**

23   " '[C]lass certification is inappropriate where a putative class representative is subject to

24   unique defenses which threaten to become the focus of the litigation.' ".[12]

25

---

26   [12] *Hanon*, 976 F.2d at 508 (citations omitted); *accord:  Baffa v. Donaldson, Lufkin &*
     *Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000); *Alaska v. Suburban Propane Gas Corp.*, 123
27   F.3d 1317, 1321-22 (9th Cir. 1997); *Jordan v. Paul Financial*, 2009 WL 192888, at **3-5 (N.D.
     Cal. 2009); *Quezada v. Loan Center of Cal., Inc.*, 2009 WL 5113506, at **3-7 (E.D. Cal. 2009);
28   *Shiring v. Tier Techns., Inc.*, 244 F.R.D. 307, 313 (E.D. Va. 2007).

- 14 -

Wright is subject to a unique defense:  California's Voluntary Payment Doctrine.  "It is a universally recognized rule that money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back on the ground that the claim was illegal."[13]  Put more succinctly, "[p]ayments voluntarily made, with knowledge of the facts, cannot be recovered."  *Steinman v. Malamed*, 185 Cal.App.4th 1550, 1557 (2010) (citations omitted).

A payment is not involuntary merely because it is made "under protest."  *Steinman*, 185 Cal.App.4th at 1558-59.  To be deemed involuntary and recoverable, a payment "must have been enforced by coercion [or duress] and there must have been no other adequate means available to prevent the loss …"  *Id.* at 1558.  Also, the party demanding the payment must act wrongfully and with knowledge that the asserted claim is false.  *Id.* at 1558-59.

Wright's token $25 payment, submitted on the eve of filing suit, was made voluntarily and cannot be recovered.  Wright believed several of the charges Ally sought to recover were inflated.  He believed it was wrong for Ally to seek recovery of the deficiency at all given his difficulty in obtaining a reinstatement quote.  He had discussed the matter with attorneys since at least July 2009.  Yet, Wright made the payment anyway because Ally demanded it from him.  Having voluntarily made the payment with full knowledge of the facts, he cannot now claim Ally's demand for payment was illegal.

Wright will be unable to show economic duress or any other excuse to overcome the voluntary payment doctrine.  Wright plainly had other options than making the payment.  After all, he filed this lawsuit just four days later.  Nor did Ally act wrongfully or with knowledge its asserted claim was false.  To the contrary, Ally disputes Wright's allegations and contends its deficiency claims against Wright and the putative class are valid.  A payment made when there is "legitimate dispute" over an "uncertain amount owed" is voluntary and cannot be recovered.[14]

---

[13] *The Texas Company v. Todd*, 19 Cal.App.2d 174, 187 (1937); *accord:  Western Gulf Oil Co. v. Title Ins. & Tr. Co.*, 92 Cal.App.2d 257, 265-266 (1949); *see also Militek v. AllState Insurance Co.*, 2007 WL 7061354 * 7 (N.D. Cal. 2007).

[14] *Steinman*, 185 Cal.App.4th at 1559 (citing *San Diego Hospice v. County of San Diego*, 31 Cal.App.4th 1048, 1058-59 (1995)).

1    For these reasons, Wright's claim is unusual, and he is subject to a unique defense.  He

2    thus cannot meet his burden of demonstrating typicality.

### VII.   NO CLASS SHOULD BE CERTIFIED UNDER RULE 23(B)(2)

4    Even if Wright had satisfied all the requirements of Rule 23(a), he fails to demonstrate

5    certification is appropriate under any subsection of Rule 23(b).

6    Wright first seeks certification under Rule 23(b)(2), which permits certification where the

7    defendant has acted on grounds generally applicable to the class, "thereby making appropriate

8    final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

9    Wright's proposed class is not of this type.  It, like most litigation, is about money, not equity.

10   As Wright acknowledges, Rule 23(b)(2) "primarily applies to suits for injunctive relief."

11   *See* Mem., 17:11-16.  "Rule 23(b)(2) is not appropriate for all classes and 'does not extend to

12   cases in which the appropriate final relief relates exclusively or predominantly to money

13   damages.' "  *Dukes v. Wal-Mart, Inc.*, 603 F.3d 571, 615 (9th Cir. 2010) (en banc) (citing Fed. R.

14   Civ. P. 23(b)(2) advisory committee note to 1966 amends., 39 F.R.D at 69, 102).[15]

15   To achieve certification under Rule 23(b)(2) when monetary relief is sought in addition to

16   injunctive relief, "a class must seek only monetary damages that are not 'superior [in] strength,

17   influence, or authority' to injunctive and declaratory relief."  *Dukes*, 603 F.3d at 616.  Contrary to

18   Wright's assertion, the test is not to look to the plaintiff's subjective intent in bringing suit.  *Id.* at

19   615-17.[16]  Rather:

20          [t]o determine whether monetary relief predominates, a district
             court should consider, on a case-by-case basis, the objective 'effect
21           of the relief sought' on the litigation. [Citation.]  Factors such as
             whether the monetary relief sought determines the key procedures
22           that will be used, whether it introduces new and significant legal
             and factual issues, whether it requires individualized hearings, and

23

---

24   [15] *See also* Moore, James Wm., *Moore's Federal Practice* (3d ed. 2006) § 23.43[3][b] ("In
     most cases, class certification under Rule 23(b)(2) is improper if the primary relief sought by the
25   action is monetary ...); *Hyderi v. Washington Mut. Bank*, 235 F.R.D. 390, 397-98 (N.D. Ill. 2006);
     *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 157 (S.D. N.Y. 2002); *Heartland
26   Communications v. Sprint Corp.*, 161 F.R.D. 111, 117 (D. Kan. 1995).

27   [16] *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003), upon which Wright relies, was
     overruled by the Ninth Circuit's *en banc* decision in *Dukes* on this very point.  *Dukes*, 603 F.3d at
28   615-17.

- 16 -

1
2

whether its size and nature-as measured by recovery per class member-raise particular due process and manageability concerns would all be relevant, though no single factor would be determinative.

3   *Id.* at 617.

4          Applying the practical approach required by *Dukes*, monetary relief plainly predominates

5   over any injunctive relief the proposed class is seeking.  Wright seeks restitution of all payments

6   he and the putative class made on their deficiencies, along with interest and disgorgement of any

7   profits Ally made on the payments.  Compl., ¶ 34; Prayer, ¶ d.  Ally collected approximately $7.8

8   million in deficiencies from customers whose cars were repossessed between October 2005 and

9   October 2009.  *See* Brewer Decl., Ex. D [Declaration of Joseph Kennedy].

10         Whether Wright is entitled to restitution of that sum—plus interest and disgorgement of

11  profits—is the central dispute in the case.  Aside from the substantial size of the figure, many

12  manageability issues would arise out of determining the amount of restitution awarded in the

13  event that a class were certified.  Wright, himself, concedes that the amount of restitution to be

14  awarded is an individual issue.  *See* Mem., 9:20-23.  As shown below, Wright is correct.

15         The injunctive relief Wright seeks—waiver of proposed class members' outstanding

16  deficiencies and deletion of their tradelines—is ancillary to the monetary relief.  Although the

17  amount of unpaid deficiencies on the books may nominally be about $197,000,000, that is not their

18  true value. Accounts on which a deficiency remained after repossession, like those of the putative

19  class, are worth pennies on the dollar because of the difficultly in collecting the unpaid sums.  For

20  evidence, the Court need look no further than Ally's success in collecting from customers between

21  October 2005 and 2009.  As of June 2010, Ally had collected only $7.8 million of the over $200

22  million originally owed—or *less than four percent* of the outstanding deficiencies.

23         An injunction preventing Ally from collecting on the $197,000,000 would have little

24  practical benefit to class members.  Most customers whose cars are repossessed never pay

25  anything on their deficiencies.  Those that do make payments generally, like Wright, pay only

26  small amounts.  Ally has little hope of ever recovering even a fraction of the outstanding

27  deficiencies regardless of what happens in this litigation.

28

1      While deletion of customers' tradelines may have some value, it is still ancillary to

2 approximately $8 million in restitution Wright seeks.  Moreover, deletion of tradelines does not

3 raise manageability issues as complex as those inherent in determining the amount of restitution

4 to be awarded.

5      For these reasons, monetary relief, not equitable relief, predominates.  No class can thus

6 be certified under Rule 23(b)(2).

7         **VIII.   INDIVIDUAL ISSUES PREDOMINATE OVER COMMON ONES UNDER
                                   RULE 23(B)(3)**

8

9      Wright also seeks certification under Rule 23(b)(3).  Wright's motion under that

10 subsection should be denied because he cannot satisfy its predominance requirement.

11     Rule 23(b)(3)'s "predominance criterion is far more demanding" than Rule 23(a)(2)'s

12 commonality requirement.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).  Because

13 the class cannot be certified in this case under Rule 23(b)(2) for the reasons discussed in the

14 preceding section, Wright must meet Rule 23(b)(3)'s stricter predominance criterion, and so it is

15 unnecessary to decide whether he has satisfied Rule 23(a)(2)'s laxer commonality requirement

16     "[A] central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of

17 common issues will help achieve judicial economy.' "  *Vinole v. Countrywide Home Loans, Inc.*,

18 571 F.3d 935, 944 (9th Cir. 2009).  As such, to decide whether common issues predominate, "the

19 court must identify issues involved in the case and determine which of them 'are subject to

20 generalized proof … applicable to the class as a whole' and which must be the subject of proof on

21 behalf of individualized class members.  'Because no precise test can determine whether common

22 issues predominate, the court must pragmatically assess the entire action and the issues

23 involved.' "[17]  "[J]ust because the legal issues or underlying theories of recovery involved may be

24 common to all class members does not mean that the proof required to establish those same issues is

25

26

27      [17] *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 651 (N.D. Cal. 2007) (citation omitted);
*accord: Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D. Cal. 2006); 7AA Wright,

28 Miller & Kane, *Federal Practice & Procedure*, § 1785 (3d ed. 2005).

1  sufficiently similar to warrant class certification."[18]

2  In this case, such a pragmatic assessment leads to the conclusion that no class should be

3  certified.  At least four individual issues predominate over whatever common question may be

4  raised in the similarity of Ally's NOIs, thus rendering the matter unmanageable as a class action.

5  **A.**   **Whether a Customer's Contract is Even Subject to Rees-Levering Is A**
       **Predominant Individual Issue**
6

7  As explained above, because Wright's theory is that Ally failed to send him and the

8  putative class NOIs that complied with the Rees-Levering Act, he must, as a threshold matter

9  prove that his contract and those of the putative class are subject to that act.

10  Wright acknowledges as much.  He alleges his contract was purchased primarily for

11  personal use and was subject to the Rees-Levering Act.  (Compl., ¶ 6.)  Based on the discovery it

12  has conducted so far, particularly Wright's deposition,[19] Ally does not dispute this allegation.

13  But, as shown above, Ally has no knowledge whether any other putative class member's

14  contract is subject to the Rees-Levering Act.  Its policy is to send NOIs to each customer whose

15  contract is marked with the "personal use" notation completed by dealership—though it has no

16  knowledge of what factors the dealership considered and even though the notation is often wrong.

17  Salinas-Diaz Decl., ¶¶4-6, Exs. A-F.  Whether an individual's contract is actually subject to Rees-

18  Levering is an inherently individual question.

19  Ally knows this from experience.  In a prior NOI case, *GMAC Repossession Cases*, JCCP

20  No. 4225, the Court ruled that, even though the case had been certified as a class action, each

21  customer identified as having been sent an NOI during the class period would be required to prove

22
23  [18] *Dumas v. Albers Med., Inc.,* 2005 WL 2172030 at *3 (W.D. Mo. 2005); *accord: Eliza-
    beth M. v. Montenez,* 458 F.3d 779, 786-87 (8th Cir. 2006); *Rutstein v. Avis Rent-A-Car Sys., Inc.,*
24  211 F.3d 1228, 1234-35 (11th Cir. 2000); *Hyderi v. Washington Mut. Bank,* 235 F.R.D. 390, 399-
    403 (N.D. Ill. 2006).

25  [19] As explained above, Wright testified at deposition that he purchased the GTO, which he
    deemed a "trailer queen," primarily to enter it into competitive car shows.  Presumably concerned
26  that Wright's use of the vehicle to seek prizes might be deemed a business use, Wright's counsel
    examined his client at deposition following Ally's examination for the sole purpose of clarifying
27  the GTO was purchased for personal use.  Kemp Decl., Ex. C [80:22-81:8].  This exchange
    demonstrates that determining the primary purpose for which any customer purchased a vehicle is
28  a fact-intensive, individual inquiry.

1  *individually* the applicability of Rees-Levering to his or her contract, and therefore his or her

2  eligibility for relief.  Accordingly, that Court required a second phase of trial, which took place

3  following the mailing of a 3-page questionnaire to all such customers, to determine who was actually

4  entitled to relief.  The questionnaire asked, among other things, whether the class members registered

5  their vehicles in California following purchase, whether the class members purchased their vehicles

6  for personal or family purposes, and whether the customer was living in California at the time of

7  repossession.  RJN, Ex. A.

8       As the *GMAC Repossession Cases* show, trying a case like this raises significant

9  individual questions that defeat the economy class actions are intended to achieve. If this court

10  were to certify a class, it would have to engage in the same sort of individualized inquiries just to

11  determine whether the Rees-Levering Act applies.  Answering this fundamental question

12  predominates over any common issue.

13      **B.**       **Causation Is a Predominant Non-Common Issue**

14       To recover either restitution or injunctive relief, the only two forms of relief available

15  under the UCL,[20] Wright must demonstrate that the allegedly wrongful business practices caused

16  the purported class harm.  The UCL does not "authorize an award for injunctive relief and/or

17  restitution on behalf of a consumer who was never exposed in any way to an allegedly wrongful

18  business practice."  *Cohen v. DirecTV, Inc.*, 178 Cal.App.4th 966, 980 (2009).  It is not enough

19  simply to prove a UCL violation.  A causal link between the violation and the remedy sought

20  must also be established.

21       In the context of class certification, the Court should consider the manner in which the

22  proponent of certification will prove harm caused by the allegedly wrongful conduct.[21]  In *Cohen*,

23

24       [20] *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1150 (2003).

25       [21] Although only the named class representative in a UCL class action need prove
standing (*In re Tobacco II Cases*, 46 Cal.4th at 326-27), the California Supreme Court did not

26  dispense with proof of causation as a prerequisite to obtaining restitution under the UCL for class
members in *Tobacco II*.  As *Cohen* explains, the Supreme Court dealt only with the question of

27  *standing* to bring a UCL claim, not with an individual class member's right to recover restitution,
or with issues of commonality or predominance in determining whether to certify a class.  *See*

28  *Cohen,* 178 Cal.App.4th at 981.

- 20 -

1   for example, the appellate court affirmed denial of class certification, finding that "common issues

2   of fact do not predominate … because the members of the class stand in a myriad of different

3   positions insofar as the essential allegation in the complaint is concerned, namely that DIRECTV

4   violated … the UCL by inducing subscribers to purchase HD services with false advertising."[22] *Id.*,

5   at 979.

6        This case is similar.   Although the proposed class members may have received similar

7   NOIs, they were affected by them, if at all, in different ways.  Some, if not most, never read the

8   NOIs at all.  Others, like Wright, may have read the NOIs, but suffered no harm as a result, either

9   because they did not want their cars back, lacked the means to reinstate, or understood how to get

10  their cars back.

11       Class members are not entitled to injunctive relief or restitution merely because they were

12  sent an NOI.  Causation must be shown.  At trial, the Court would have to consider, at a minimum,

13  whether each customer was capable of reinstating, whether he intended to do so, and whether he

14  would have done so but for Ally's purported failure to adequately explain the procedure in its NOIs.

15  This fact-intensive, individual inquiry predominates over whatever common questions may be

16  presented by the NOIs themselves.

17       **C.      The Measure and Amount of Restitution Owed, If Any, Is an Individual Issue**

18       If the Court were to determine both that Ally's NOI violated the UCL and that this violation

19  caused a particular customer to lose money or property, it would then have to determine the amount

20  of restitution each customer was owed, if any.  As Wright concedes (*see* Mem., 9:20-23), this is an

21  inherently individual inquiry.

22       Restitution under the UCL "operates only to return to a person those *measurable amounts*

23  which are *wrongfully taken* by means of an unfair business practice." *Day v. AT&T Corp.,*

24  63 Cal.App.4th 325, 339 (1998). For there to be restitution, there must be proof that "[t]he

25  offending party … obtained something to which it was not entitled and the victim … [gave] up

26

27  _____
    [22] As the court explained, some customers saw only ads that did not contain the allegedly
28  false technical specifications, others bought HD services "primarily based on word of mouth or
    because they say DIRECTV's HD in a store or at a friend's or family member's home."  *Id.*

1   something which he or she was entitled to keep." *Id.*  "The amount of restitution awarded under

2   the … [UCL] … must be supported by *substantial evidence*."  *Colgan v. Leatherman Tool Group,*

3   *Inc.*, 135 Cal.App.4th 663, 700 (2006) (emphasis added).  A plaintiff may not achieve class

4   certification without articulating a measure of how restitution should be awarded.  *In re Vioxx*

5   *Class Cases*, 180 Cal.App.4th 116, 131-32 (2009).

6         As the emphasized words make clear, to obtain restitution, the "victim" must show a

7   causal connection between the alleged unfair competition and the measurable amounts wrongfully

8   taken.  Thus, to determine how much (if any) restitution borrowers are entitled to, the Court

9   would have to determine how much (if anything) they have lost because of Ally's allegedly

10  defective NOI.  This raises the same individual inquiries into causation discussed in the preceding

11  section.  If a customer had no intention of reinstating her contract or could not afford to do so, any

12  payments made to Ally were not "wrongfully acquired" under the UCL and could not be restored.

13         **D.       Whether the Customer Made a Voluntary Payment is an Individual Issue**

14         As explained above, under the Voluntary Payment Doctrine, one of Ally's affirmative

15  defenses, payments made voluntarily with knowledge of the facts cannot be recovered on the

16  ground that the demand was illegal.  *Steinman*, 185 Cal.App.4th at 1557-59.

17         Whether the doctrine bars any putative class member's recovery of his or her deficiency

18  payments, like it bars Wright's recovery, is an inherently individual inquiry.  This is because the

19  doctrine may not apply if a customer was operating under a "mistake of fact" when he made the

20  payment, which is measured by the payor's subjective state of mind, not any objective standard.[23]

21         It is well-settled that proof of class members' states of mind is an individual question

22  particularly ill-suited for class certification.[24]  Proof of each customer's state of mind would entail

23  fact-intensive, individual inquiries, presenting yet another predominant individual issue.

24  _____

25         [23] *Foxx v. Williams*, 244 Cal.App.2d 223, 232-233 (1966); *American Oil Service v. Hope Oil Co.*, 194 Cal.App.2d 581, 587 (1961).

26         [24] *Patterson v. Mobil Oil Corp.*, 241 F.3d 417, 419 (5th Cir. 2001) ("Claims for money

27  damages in which individual reliance [or other state of mind] is an element are poor candidates for class treatment, at best."); *see also Fletcher v. Security Pacific National Bank*, 23 Cal.3d 442,

28  448 (1979) (denial of class certification affirmed because the breach of contract required proof of each class member's lack of prior knowledge of challenged practice)

## IX.    A CLASS ACTION WOULD NOT BE SUPERIOR

"A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.* 97 F.3d 1227, 1234-35 (9th Cir. 1996).  By the same token, when other, more effective remedies are available for class members to seek redress, a class action is not superior.  *Campos v. Western Dental Servs., Inc.*, 404 F.Supp.2d 1164, 1172-73 (N.D. Cal. 2005); *Arnson v. General Motors Corp.*, 377 F.Supp. 209, 214-15 (N.D. Ohio 1974).

In this case, putative class members do have other remedies that are more effective than the only remedies Wright seeks on their behalf—injunctive relief and restitution recoverable only on individual proof and with substantial administrative difficulties.

Adequate *individual* remedies exist.  If Ally files a collection action against a consumer, he may plead its non-compliance with the Rees-Levering Act as a defense.  *See* Cal. Civ. Code, § 2983.8.  Customers who have paid some or all of their deficiencies may be able to sue for a refund under Wright's theory.  In either case, a prevailing customer potentially could recover attorneys' fees under California Civil Code sections 1717 or 2983.4.  "Where a statute provides attorneys' fees to a prevailing plaintiff there is less incentive to protect by class certification individuals with small claims." *Maguire v. Sandy Mac, Inc.*, 145 F.R.D. 50, 53 (D. N.J. 1992); accord: *Andrews v. American Tel & Tel. Co.* (11th Cir. 1996) 95 F.3d 1014, 1025 (11th Cir. 1996).

## X.    ALTERNATIVELY, IF A CLASS IS CERTIFIED, IT SHOULD BE SUBSTANTIALLY NARROWED

If the Court were otherwise inclined to certify a class notwithstanding the problems mentioned above, any class should be substantially narrowed.

### A.    The Class Period is Too Long

Wright seeks to certify a class of Ally customers whom were sent NOIs from October 2005 to the date of class certification.  But, Wright only received one of the three form NOIs Ally used during the requested class period.  Wright is an inadequate representative of those who received the other two forms—i.e., those in use from December 2009 to the present.  Any class

1   certified should terminate as of December 2009, when the second form NOI which Wright did not

2   receive was implemented.

3        Again, the sole defect Wright attributes to the second and third forms of NOIs is that they

4   do not disclose a physical address where the extension request form could be personally served.

5   *See* Mem., 3:11-14, 7:10-22.

6        Wright would be an inadequate and atypical representative of persons who received those

7   NOIs and wish to assert that claim.  Wright made no attempt to return the extension request form

8   because he did not receive the NOI until after the deadline to request the extension had expired.

9   Kemp Decl., Ex. C [55:16-56:9, Ex. 6].  Whether or not the NOI disclosed a physical address did

10   not impact Wright at all.  Wright cannot be a representative of a class asserting a claim he lacks

11   standing to assert himself.  Wright's claim is not representative of those customers (assuming

12   there are any) who actually wanted to serve the extension request form personally on Ally and

13   claim they were prejudiced by the NOI's omission of a physical address.

14        Even were Wright the proper representative, this theory is wholly inappropriate for

15   resolution on a classwide basis.  Presumably, the only persons who would belong in such a class

16   would be those who, unlike Wright, intended to serve the extension request form personally on

17   Ally and had the means to reinstate their contract or redeem their vehicle, but were unable to do

18   because the NOI did not disclose a physical address.  Proving causation under such a theory

19   would create significant manageability issues.  There would be no objective characteristic the

20   Court could look to for evidence—such as a submitted payment or returned extension form.

21   Rather, each claim would turn on whether the customer intended to personally serve the extension

22   form but was unable to do so—a plainly unsuitable theory for class treatment.  .

23        Accordingly, any class certified should terminate as of December 2009.

24   **B.   Any Class Must Exclude Persons Against Whom Ally Has Obtained**
         **Judgments**

25

26        The class is also overly broad because it includes persons against whom Ally has obtained

27   judgments that conclusively determine its NOIs comply with the Rees-Levering Act.  Those

28   judgments operate as *res judicata* and cannot be attacked under the guise of a class action.

- 24 -

1    A creditor cannot obtain a deficiency judgment after repossession unless it proves that its

2  NOI complies with the Rees-Levering Act.  Cal. Civ. Code, § 2983.8.  Accordingly, in each case

3  where Ally obtained a judgment against a customer, another court necessarily found that its NOI

4  complied with Rees-Levering and that the debtor owed Ally a deficiency.  Neither of those

5  findings can be relitigated here.

6    Nevertheless, Wright's counsel have unsuccessfully tried in prior NOI actions, and try

7  again here, to set aside judgments *en masse* because they believe they were wrongly entered.

8  Compl., ¶¶ 20(f), 27, 28, 33; Prayer, ¶ G.  As the Court of Appeal recently confirmed in a similar

9  NOI class action filed by Wright's counsel, neither the UCL nor class procedure provide any

10  exception to res judicata or grounds to call into question the validity of final judgments.  *In re*

11  *Fireside Bank Cases*, 187 Cal.App.4th 1120, 1227-30 (2010).

12    Wright alleges no new facts here that would warrant a departure from *Fireside*.

13  Accordingly, any class must exclude judgment debtors.

14                          **XI.    CONCLUSION**

15    For the reasons stated, the Court should deny Wright's motion for class certification.

16  Alternatively, if the Court were otherwise inclined to certify a class, the class period should

17  terminate in December 2009 and any class certified should exclude persons against whom Ally

18  has obtained a deficiency judgment.

19

20  DATED:  December 30, 2010

21                                         SEVERSON & WERSON
                                           A Professional Corporation
22

23                                         By: _____/s/___Erik Kemp_____
                                                   Erik Kemp
                                                   E-mail: ek@severson.com
24                                         Attorneys for Defendant
                                           Ally Financial Inc.
25

26

27

28