MICHAEL E. LINDSEY (SBN 99044)
ATTORNEY AT LAW
4455 Morena Blvd., Ste. 207
San Diego, California 92117-4325
      Telephone: (858) 270-7000
      mlindsey@nethere.com

ANDREW J. OGILVIE (SBN 57932)
CAROL M. BREWER  (SBN 214035)
ANDERSON, OGILVIE & BREWER LLP
600 California Street, 18th Floor
San Francisco, California 94108-2711
      Telephone: (415) 651-1950
      Fax: (415) 956-3233
      andy@aoblawyers.com
      carol@aoblawyers.com

Attorneys for Plaintiff Roderick Wright

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK WRIGHT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS ACCEPTANCE CORPORATION<br><br>Defendant. | Case No. 09cv2666 JM (AJB)<br><br>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT<br><br>Date:      August 22, 2011<br>Time:     10:00 a. m<br>Judge:    Hon. Jeffrey T. Miller<br>Courtroom 16<br><br>[**Oral Argument Requested**]<br><br>Case filed:  October 23, 2009<br>Removed:   November 25, 2009 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...............................................................................................1

II.   FACTS ..............................................................................................................3

A.    Mr. Wright's Pontiac GTO and His Efforts to Obtain a Reinstatement Sum ..................................................................3

B.    The NOI That GMAC Sent to Mr. Wright Does Not Include "All the Conditions Precedent" to Reinstatement......................................................................................5

1.    The NOI Did Not Include Amounts Coming Due After The Date of The NOI and Before The Reinstatement Deadline...............................................5

2.    The NOI Did Not Include The $75 Redemption Fee or the $23 Inspection Fee..............................................6

3.    The NOI Did Not Include The $15 Fee To Local Law Enforcement...................................................6

4.    The NOI Did Not Include Any Physical Address for Personal or Overnight Delivery ....................7

5.    Persons Answering GMAC's Customers' Calls Are Not GMAC Employees and Are Located in The Philippines ..............................................................8

C.    GMAC Knows All Required Payment Information For Reinstatement When It Generates The NOI...........................8

D.    GMAC Is Reporting Its Deficiency Claim Against Mr. Wright To Credit Bureau .......................................................8

III.  ARGUMENT .....................................................................................................9

A.    Summary Judgment Is Appropriate As There Is No Issue Of Material Fact..................i..............................................................9

B. Mr. Wright Is Not Liable For GMAC's Deficiency Claims Because GMAC's NOI Does Not Comply With Civil Code § 2983.29(a)(2) ...................................................................9

    1. California's "Absolute Bar" Rule ..........................................................9

    2. Rees-Levering's "Absolute Bar" Rule ...............................................10

    3. Rees-Levering's Requirements for NOIs .........................................11

C. GMAC Engaged In Unlawful Business Practices ......................................14

    1. Mr. Wright Has UCL Standing..........................................................15

    2. GMAC Sent Mr. Wright An NOI That Did Not Inform Him Of "All The Conditions Precedent" To Reinstatement As Civil Code § 2983.2(a)(2) Requires...............17

    3. GMAC Demanded Money From Mr. Wright Based On Its Invalid Deficiency Claim.........................................................17

D. Mr. Wright Is Entitled to Declaratory Relief...............................................18

IV. CONCLUSION.......................................................................................................18

≡

*Wright v. GMAC*, Case No. 09cv2666 JM (AJB)
Plaintiff's Memorandum of Point and Authorities in Support of Motion for Summary Judgment

# TABLE OF AUTHORITIES

**Page**

**Case**

*Aho v. AmeriCredit Financial Services, Inc.*

2011 WL 2292810, \*2 (S.D.Cal.2011) ...................................................................................... 16

*Arguelles-Romero v. Superior Court*

184 Cal.App.825 (2010) ............................................................................................................ 14

*Atlas Thrift Co. v. Horan*

27 Cal.App.3d 999 (1972) ......................................................................................................... 10

*Bank of America v. Lallana*

19 Cal.4th 203 (1998) ............................................................................................................. 1,11

*Batlan v. Bledsoe*

569 F.3d 1106 (9th Cir.2009) .................................................................................................... 12

*Canadian Commercial Bank v. Ascher Findley Co.*

229 Cal.App.3d 1139 (1991) ..................................................................................................... 10

*Celotex Corp. v. Catrett*

477 U.S. 317, 323 (1986) ............................................................................................................. 9

*CIT Corporation v. Anwright*

191 Cal.App.3d 1420 (1987) ..................................................................................................... 10

*Fireside Bank v. Superior Court*

40 Cal.4th 1069 (2007) ......................................................................................................... 15,18

*Ford Motor Credit Company v. Price*

163 Cal.App.3d 745 (1985) ....................................................................................................... 10

*Juarez v. Arcadia Financial, Ltd.*

152 Cal.App.4th 889 (2007) ....................................................................... 1,11,12,13,14,18

*Kwikset Corp. v. Superior Court*

51 Cal.4th 310 (2011) ................................................................................................................ 15

i

*Metheny v. Davis*

107 Cal.App.137 (1930) ...................................................................................................9,10

*Mora v. Harley-Davidson Credit Corp.*

2010 WL 4321602 (E.D.Cal.2010) ........................................................................................14

*Rocky Mountain Export Co. v. Colquitt*

179 Cal.App.2d 204 (1960) ..................................................................................................10

*Rubio v. Capital One Bank*

613 F.3d 1195 (9th Cir.2010) .............................................................................................16

*Rutan v. Summit Sports, Inc.*

173 Cal.App.3d 965 (1985) ...................................................................................................10

*Salenga v. Mitsubishi Motors Credit of America, Inc.*

183 Cal.App.4[th] 986 (2010) ............................................................................................11,14

*Union Safe Deposit Bank v. Floyd*

76 Cal.App.4[th] 25 (1999) .....................................................................................................10

*Velasquez v. Chase Home Finance LLC*

2010 WL 3221905 (N.D. Cal.2010) .......................................................................................16

*Western Décor & Furnishings Industries, Inc. v. Bank of America*

91 Cal.App.3d 293 (1979) .....................................................................................................10

*White v. TransUnion*

462 F.Supp.2d 1079 (C.D.Cal.2006) ......................................................................................16

**Statutes**

Bus. & Prof. Code § 17024 ....................................................................................................15

Bus. & Prof. Code §17200 .......................................................................................................1

Civil Code § 1785.25(a) ..........................................................................................................18

Civil Code § 2981 .....................................................................................................................1

Civil Code § 2983.2(a)(2) .............................................................1,2,9,12,13,14,17,18,19

Civil Code § 2983.2(a)(1-9) .....................................................................................................12

Civil Code § 2983.2(a) ......................................................................................................11,12

ii

Civil Code § 2983.8(b)............................................................................................11

Fed.R.Civ.P. 23(f) ....................................................................................................2

Fed.R.Civ.P. 56 ........................................................................................................2

Fed.R.Civ.P. 56(c)....................................................................................................9

Fed.R.Civ.P. 56(e)....................................................................................................9

Gov. Code § 26751 ...................................................................................................7

Gov. Code § 41612 ...................................................................................................7

U.C.C. § 9504(3).....................................................................................................10

Veh. Code § 28.......................................................................................................6,7

**Miscellaneous**

Class Action Fairness Act

28 U.S.C. §§ 1332(d), 1453 .......................................................................................1

iii

## I.      INTRODUCTION

Plaintiff Roderick Wright brought this putative consumer class action against GMAC, n/k/a Ally (hereafter, GMAC) under California's Unfair Competition Law (UCL), Bus. & Prof. Code §17200 *et seq*., which prohibits unlawful, unfair, and fraudulent business practices. GMAC removed the case from San Diego County Superior Court to this Court based on the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, alleging that this action involves more than $5 million in controversy and more than 100 alleged class members.

Among other claims, Mr. Wright alleged that GMAC's debt-collection practices are unlawful because they violate California's Rees-Levering Act, Civil Code § 2981 *et seq.*: The post-repossession notice of intent to sell (NOI) that GMAC sent to him dated July 17, 2009 does not set forth "all the conditions precedent" that he was required to satisfy in order to reinstate his vehicle contract. See Civil Code § 2983.2(a)(2). Under Rees-Levering's "absolute bar" rule, he is liable for the deficiency following a repossession sale "*only if*" GMAC sent an NOI that complies with all the requirements of Civil Code § 2983.2. Because GMAC's NOI did not comply with Rees-Levering's notice requirements, Mr. Wright is not liable for the deficiency. *Juarez v. Arcadia Financial, Ltd.,* 152 Cal.App.4th 889 (2007); *see also Bank of America v. Lallana*, 19 Cal.4th 203 (1998).

Mr. Wright moved for certification of a class of persons to whom GMAC sent the same defective form of NOI. However, because Mr. Wright thought he received GMAC's NOI too late to reinstate, the Court denied his motion for class certification. The Court reasoned that his tardy receipt of GMAC's NOI rendered him atypical of other class members and also an inadequate representative: The Court said that since Mr. Wright's late receipt of GMAC's NOI was *by itself* a defense to GMAC's deficiency claim, Mr. Wright would not have to prove the same facts as other class members to invalidate GMAC's deficiency claim. See Order, Document 51, e.g., p. 7:11-13: "[T]he failure to timely provide a NOI, and the other disclosures mandated by Rees-Levering,

1

invalidates any deficiency claim that GMAC may have." Mr. Wright petitioned the Ninth Circuit for permission to appeal pursuant to Fed.R.Civ.P. 23(f), but the Ninth Circuit denied his petition.

Late receipt of an NOI is not actually a defense to a deficiency claim under Rees-Levering. GMAC acknowledges that: Notwithstanding this Court's opinion that GMAC's apparent failure to timely provide an NOI bars its deficiency claim, GMAC is still pursuing Mr. Wright for the deficiency. [1]

Thus, Mr. Wright' *individual* claim against GMAC for declaratory relief and his UCL claims for injunctive relief and restitution remain before the Court. Mr. Wright moves for summary judgment pursuant to Fed.R.Civ.P. 56 as to those claims. Preliminarily, he asks the Court to determine that GMAC's NOI contains insufficient reinstatement information to comply with Civil Code § 2983.2(a)(2). Then, because GMAC's NOI is defective, he asks the Court to determine that GMAC has violated the unlawful prong of the UCL because (i) it sent him an NOI that did not comply with Rees-Levering; (ii) GMAC demanded and collected money from him on its deficiency claim when he was not liable for the deficiency; and (iii) GMAC reported the invalid deficiency claim to credit bureaus as a charge-off. Mr. Wright asks the Court to enter judgment declaring that he is not obligated to pay GMAC any deficiency. He also asks the Court to enter an injunction requiring GMAC to cancel his obligation to pay the deficiency and to clear his credit report of the charge-off of its deficiency claim. Finally, he asks the Court to enter an order requiring GMAC to disgorge the money Mr. Wright paid on its invalid deficiency claim.

///

///

///

---

[1]    GMAC contends that it is entitled to pursue Mr. Wright for its deficiency claim, even if he did not timely receive GMAC's NOI. See Exhibit D to Brewer dec., e.g., page 3:2-4: "[GMAC] denies that plaintiff's failure to receive [GMAC's] NOI before the deadline to reinstate or redeem… constitutes a defense to any deficiency action [GMAC] may pursue."

2

*Wright v. GMAC*, Case No. 09cv2666 JM (AJB)
Plaintiff's Memorandum of Point and Authorities in Support of Motion for Summary Judgment

## II.    FACTS

### A. Mr. Wright's Pontiac GTO and His Efforts to Obtain a Reinstatement Sum

Mr. Wright purchased a new Pontiac GTO from a California car dealer in April 2007. Wright dep. at 9:16-19 and Exhibit 1 thereto. The dealer sold his conditional sale contract to GMAC. See page 2 of Exhibit 1 to Wright dep. Mr. Wright took special care of his car. He customized it with a special paint job, wheels, rims, badges and tinted windows. Wright dep. at 59:5-61:2. He only drove the car on weekends and transported it to amateur car shows on a flatbed; he called it a "trailer queen." See *id.* at 58:8-23; 60:22-61:2; 80:23-81:8.

In March 2009, Mr. Wright began having difficulty making the payments. His girlfriend had developed neurofibromatosis, a skin disease. He took days off from his job as a railroad driver to care for her and take her to the hospital, and lost income as a result. *Id.* at 8:7-21; 16:10-17:12. Anticipating a $3,500 Pell grant that would allow him to come current on his car contract, he made arrangements with someone at GMAC to make twice-monthly payments for several months. See *id.* at 18:8-21:14. However, after a couple of months another person at GMAC contacted him to contradict the authorization to pay twice monthly, and told him if he didn't pay in full immediately, his car would be repossessed. *Id.* at 22:3-25:14. He spoke to a GMAC supervisor to try to sort out the discrepancy. *Id.* at 25:18-26:23.

To Mr. Wright's shock, GMAC repossessed his car. See *id.* at 27:15-28:3. Mr. Wright watched as the repossession agent damaged the vehicle by allowing the underbody to drag on the ground so that sparks flew. *Id.* at 28:22-29:2. Mr. Wright was upset about the repossession and the damage. He called GMAC in Los Angeles, using a phone number the repossession agent had given him, to see if he could get the car back and to find out who would pay for the damage. *Id.* at 29:4-6; 29:19-30:22. GMAC said it didn't have the car. *Id.* at 29:5-6. He also called the Pontiac dealership, because the vehicle was still under warranty. *Id.* at 29:7-12; 30:23-31:14. A few days later he again

3

called GMAC in Los Angeles, but was told it still didn't have his vehicle. *Id*. at 32:2-15. He asked the person at GMAC how much it would cost to get his car back, but no one could tell him. Nor did they return his phone call. *Id* at 44:10-45:8. Later he received GMAC's NOI, which stated he could reinstate his vehicle contract if he paid $2,262. *Id*. at 45:20-46:14; 50:5-7; page 2 of Exhibit 6 to Wright dep. That same day he called GMAC again, this time using a different telephone number printed in the NOI. Realizing that the $2,262 reinstatement figure listed in the NOI was incomplete, he asked GMAC how much it would cost to get his car back. The person at GMAC could not give him an amount and told him to call back in a few days. *Id*. at 46:15- 47:12. He called back later and spoke to someone different. This person could not give him a payment amount either. He asked GMAC to call him back to give him the correct payment amount, but no one ever called. *Id*. at 47:13-49:5.

He needed that amount "[b]ecause I was told not only would I have to pay for the car, I had to pay for the tow truck company, from wherever it came from; I had to pay for where they housed the car at; I had to pay for that also." *Id*. at 49:8-12. He understood that he "just couldn't walk in and pay $2,260--according [to] one of [GMAC's] representatives--and drive the car off. I had to pay those other fees also." *Id*. at 51:10-12. Although he had sufficient resources to reinstate by the time he received the NOI, he did not send a check to GMAC "because they never got back to me saying how much the whole total would be." *Id*. at 50:10-24; 51:10-16. He realized that GMAC's figure was incomplete:

> "It doesn't say nothing in there about the tow truck company, the housing company--that you guys had the car towed there or the police department. It has none of that in there. And they had already told me to make sure I bring, you know, more money to cover all of those fees, but nobody at GMAC seemed to know how much that was."

*Id*. at 53:22-54:3; see also 53:18-54:15.

On October 7, 2009, he received a letter from GMAC stating that it had sold the car and he owed a deficiency of $9,694. *Id*. at 56:25-57:17 and Exhibit 7 to Wright dep.

4

Mr. Wright made a $25 payment on October 16, 2009, in response to GMAC's payment demand. *Id.* at 65:16-66:10; 66:23-24; 67:2-19 and Exhibit 8 to Wright dep.

**B. The NOI that GMAC sent to Mr. Wright Does Not Include "All the Conditions Precedent" to Reinstatement**

GMAC designated Ms. Salinas-Diaz to testify about GMAC's requirements for reinstatement, which she defined as "allowing the customer to continue with the loan and only pay past-due payments and any expenses, late charges, et cetera." Salinas-Diaz dep. 38:23-39:2. To reinstate, GMAC requires its California customers to pay the repossession fee, transport fees, storage fees for the vehicle, an inspection fee, the outstanding unpaid balance, finance charges, late charges, and "any potential unpaid charges that the customer may have." *Id.* at 39:3-40:12.

But, as demonstrated by the undisputed facts, the NOI that GMAC sent to Mr. Wright failed to include many of its conditions for reinstatement.

**1. The NOI Did Not Include Amounts Coming Due After the Date of the NOI and Before the Reinstatement Deadline**

Page 2 of GMAC's NOI shows that the "Amount Required to Reinstate" was calculated as of the date of the NOI. GMAC did not inform Mr. Wright of the amounts and due dates of installments that would come due between the NOI date and the end of the 20-day period for reinstatement. Instead of listing the amounts that would come due and the dates when they had to be paid, the NOI stated that "as of the date of this letter," in order to reinstate, he would have to pay a TOTAL amount, plus:

> The longer you wait to redeem or reinstate, the more you may have to pay to get your vehicle back. Only reasonable expenses may be charged. They must be the direct result of taking, storing and selling the vehicle. We may also charge you the costs of getting it ready for sale and reasonable attorney fees, as the law permits.

Exhibit B to Wright dec., p. 2.

To reinstate, GMAC required its customers to make any payments that came due after the date of the NOI but before reinstatement. Salinas-Diaz dep. 46:1-15; 48:7-11;

5

50:1-6. The NOI that GMAC sent to Mr. Wright did not state what those payments were; Ms. Salinas-Diaz conceded that the NOI did not have this information. She testified that customers wishing to reinstate would have to consult their conditional sale contracts to determine what they had to pay during that time frame. See B to Wright dec.; Salinas-Diaz dep. at 48:20-50:6.

### 2.  The NOI Did Not Include the $75 Redemption Fee or the $23 Inspection Fee

Additionally, Ms.Salinas-Diaz testified that reinstating and redeeming customers would have to pay a redemption fee and an inspection fee to get their vehicles back. The $75 redemption fee is charged by the auto auction or the repossession agent for handling the paperwork and returning the vehicle to the customer; the $23 inspection fee is the cost to have a third party vendor inspect the vehicle's condition. *Id*. at 39:3-40:12; 40:17-21. Both fees are third parties' pass-through charges. *Id*. at 45:14-25; 47:11-48: 6; 72:7-19; 73:7-19. GMAC's NOI neither listed these charges nor told Mr. Wright where to pay those fees or to whom. See Exhibit B to Wright dec. These are additional amounts that GMAC would have required Mr. Wright to pay if he wished to reinstate his contract. Salinas-Diaz dep. at 47:11-48:6.

### 3.  The NOI Did Not Include the $15 Fee to Local Law Enforcement

In order to reinstate and get their vehicles back, California customers must obtain a release form from the local law enforcement agency to which GMAC's agent reported the repossession. The statutory fee is $15.[2] That fee must be paid to the police, sheriff's

---

[2]  Vehicle Code § 28 provides in pertinent part:
(a) Whenever possession is taken of any vehicle by or on behalf of any legal owner thereof under the terms of a security agreement or lease agreement, the person taking possession shall notify, within one hour after taking possession of the vehicle, and by the most expeditious means available, the city police department where the taking of possession occurred, if within an incorporated city, or the sheriff's department of the county where the taking of possession occurred, if outside an incorporated city, or the police department of a campus of the University of California or the California State

6

*Wright v. GMAC*, Case No. 09cv2666 JM (AJB)
Plaintiff's Memorandum of Point and Authorities in Support of Motion for Summary Judgment

office, or UC Campus police where the repossession was reported.[3] No one may release a repossessed vehicle without receiving the release form. *Id*.

GMAC informed Mr. Wright that he had to pay a "repossession report fee" to the San Bernardino Police Department, as Vehicle Code § 28 and Govt. Code §§ 26751 and 41612 require. But GMAC did not give Mr. Wright a contact number or address for the police department or inform him that the fee is $15. Yet Ms. Salinas-Diaz confirmed that defaulting customer must pay the $15 fee to the police departments where the repossession was reported in order to get their vehicles back. Salinas-Diaz dep. at 40:13-16.

### 4. The NOI Did Not Include Any Physical Address for Personal or Overnight Delivery

GMAC's NOI states that to redeem or reinstate, Mr. Wright could send his payment to GMAC "by mail, overnight delivery service, Western Union or MoneyGram." See Exhibit B to Wright dec. The extension form on the NOI said he could get an additional 10 days to reinstate or redeem if he delivered the extension form "either in person or by certified mail, return receipt requested." *Id*. But GMAC's NOI did not include any physical address, only a post office box. Ms. Salinas-Diaz acknowledged

---

University, if the taking of possession occurred on that campus, and shall within one business day forward a written notice to the city police or sheriff's department.

[3]     Gov. Code § 26751 provides:

After possession is taken of any vehicle by or on behalf of any legal owner thereof under the terms of a security agreement or lease agreement, the debtor shall pay the sheriff a fee of fifteen dollars ($15) for the receipt and filing of the report of repossession pursuant to Section 28 of the Vehicle Code before the vehicle may be redeemed by the debtor. Except as provided herein, any person in possession of the vehicle shall not release it to the debtor without first obtaining proof of payment of the fee to the sheriff.

Gov. Code § 41612 provides:

After possession is taken of any vehicle by or on behalf of any legal owner thereof under the terms of a security agreement or lease agreement, the debtor shall pay the chief of police or a parking authority operated by a city and county a fee of fifteen dollars ($15) for the receipt and filing of the report of repossession pursuant to Section 28 of the Vehicle Code before the vehicle may be redeemed by the debtor. Except as provided herein, any person in possession of the vehicle shall not release it to the debtor without first obtaining proof of payment of the fee to the chief of police or parking authority

7

that anyone wishing to deliver anything to GMAC personally or by overnight delivery would first have to telephone GMAC for an address. Salinas-Diaz dep. 42:12-25; 43:1-14. That is an additional reason GMAC's NOI does not include "all of the conditions precedent" to reinstatement.

### 5. Persons Answering GMAC's Customers' Calls Are Not GMAC Employees and Are Located in the Philippines

Because GMAC's NOIs lacked "all of the conditions precedent" to reinstatement," any GMAC customer wanting to reinstate would have to call GMAC for more information. But, beginning in May 2009—several months before Mr. Wright's car was repossessed—GMAC re-routed its customer calls. Instead of answering customer telephone calls in Texas, GMAC hired a third-party vendor, Sykes, located in Manila, Philippines. The persons answering GMAC's customers' questions are not GMAC employees. *Id*. at 75:8-76:10. The call center hours are limited to 7:00 a.m. to 7:00 p.m., Central Standard Time, Monday through Friday. *Id*. at 79:16-80:20. Also, although Sykes employees can answer certain questions, they are unable to negotiate with customers. *Id*. at 77:6-9.

### C. GMAC Knows All Required Payment Information for Reinstatement When it Generates the NOI

GMAC knows all of the required fees for reinstatement by the time it generates its NOIs. Salinas-Diaz dep. 79:11-15. Yet it does not include all of them in its NOIs. See Exhibit B to Wright dec.

### D. GMAC Is Reporting Its Deficiency Claim Against Mr. Wright to Credit Bureaus

GMAC designated Mr. Snel to testify about GMAC's procedures to collect deficiencies from its customers who defaulted on their contracts. Snel dep. at 5:22-25; 6:1-5. Mr. Snel testified that GMAC automatically reports deficiency claims to the credit bureaus in every case in which it claims that a deficiency is owed. *Id*. at 17:5-19. GMAC acknowledged that reporting deficiency claims to the credit bureaus helps it to collect on

8

those claims. *Id.* at 16:12-19. Mr. Snel testified that it is a "frequent" occurrence that people want to clear their credit report by paying off a deficiency. *Id.* at 25:25–26:8.

GMAC has reported and continues to report that Mr. Wright owes a deficiency. GMAC currently reports its deficiency claim against Mr. Wright as a charge-off of $9,694 on his credit report. Wright dec., ¶ 11 and Exhibit E thereto.

## III.   ARGUMENT

### A. Summary Judgment is Appropriate as There is No Issue of Material Fact

Fed.R.Civ.P. 56(c) authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Here, Mr. Wright bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to GMAC to present facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex* at 324.

Based on the undisputed evidence, including GMAC's testimony, GMAC's NOI did not include "all the conditions precedent" that GMAC required for Mr. Wright to reinstate his vehicle contract, as Civil Code § 2983.2(a)(2) requires. He has UCL standing because he has been injured in fact and has lost money or property because (i) he paid money in response to GMAC's unlawful demand to pay the deficiency; and (ii) GMAC subsequently reported the charge-off of the deficiency to the credit reporting agencies. GMAC has violated the UCL by sending him an unlawful NOI; by unlawfully pursuing him for and collecting on a deficiency he does not owe; and by reporting the invalid deficiency claim to the credit bureaus. Mr. Wright is therefore entitled to judgment as a matter of law.

///

///

///

9

*Wright v. GMAC*, Case No. 09cv2666 JM (AJB)
Plaintiff's Memorandum of Point and Authorities in Support of Motion for Summary Judgment

**B. Mr. Wright Is Not Liable For GMAC's Deficiency Claims Because GMAC's NOI Does Not Comply With Civil Code § 2983.2(a)(2)**

**1.     California's "Absolute Bar" Rule**

For decades, California law has barred a creditor's right to a deficiency against a defaulting customer if the post-repossession notice is defective. That is the "absolute bar" rule. The absolute bar rule predates the Commercial Code. See *Metheny v. Davis,* 107 Cal.App.137 (1930); *Rocky Mountain Export Co. v. Colquitt*, 179 Cal.App.2d 204 (1960). More recently, California cases have enforced the rule consistently in the context of the Commercial Code. See *Union Safe Deposit Bank v. Floyd*, 76 Cal.App.4th 25, 30 (1999) (post-repossession notice of commercial sale of helicopter was defective under U.C.C. § 9504(3), barring deficiency judgment, because it was unclear when the sale would take place, and whether the sale was public or private); *Canadian Commercial Bank v. Ascher Findley Co.*, 229 Cal.App.3d 1139, 1156 (1991) (limited partners need not prove a "loss" in order to invoke the protections of the absolute bar rule in Commercial Code § 9504); *Rutan v. Summit Sports, Inc.*, 173 Cal.App.3d 965, 971 (1985) ("The right to a deficiency judgment is lost when the secured party fails to give proper notice to the debtor as required by Uniform Commercial Code section 9504, subdivision (3)"); *CIT Corporation v. Anwright*, 191 Cal.App.3d 1420, 1422-1423 (1987) (changing the *place of sale* to a few blocks away from the address specified in the notice barred a lender's deficiency under the Commercial Code, notwithstanding no evidence of prejudice); *Ford Motor Credit Company v. Price,* 163 Cal.App.3d 745, 751 (1985) (explaining that because the legislative intent behind the Commercial Code's notice provision was to "establish definitive standards so as to prevent undue litigation as to exactly what notice is required for a valid foreclosure sale," Ford Credit's failure to give statutorily-required public notice of the foreclosure sale barred its deficiency); *Western Decor & Furnishings Industries, Inc. v. Bank of America*, 91 Cal.App.3d 293, 306-308 (1979); *Atlas Thrift Co. v. Horan*, 27 Cal.App.3d 999 (1972) ("the right to a deficiency judgment depends on compliance with the statutory requirements concerning dispositions and notice").

*Wright v. GMAC*, Case No. 09cv2666 JM (AJB)
Plaintiff's Memorandum of Point and Authorities in Support of Motion for Summary Judgment

## 2. Rees-Levering's "Absolute Bar" Rule

When it enacted the Rees-Levering Act, the Legislature decided that the most effective way to force finance companies to comply with the Act's notice requirements was to deprive them of the deficiency claim whenever they failed to send proper post-repossession notice. The statute is clear and allows no exceptions and has been so construed by the California courts. "[T]he NOI procedure serves two separate statutory purposes: permitting reinstatement, and/or allowing a deficiency judgment, if proper notice was given." *Salenga v. Mitsubishi Motors Credit of America, Inc.*, 183 Cal.App.4th 986, 1001-1002 (2010).

Rees-Levering is a "buyer protection act*." Juarez v. Arcadia Financial, Ltd., supra*, 152 Cal.App.4th at 901. The Act "creates a broad range of consumer protections for those who buy cars on credit." *Bank of America v. Lallana, supra*, 19 Cal.4th at 209. After creditors repossess vehicles, Rees-Levering requires them to give defaulting consumers NOIs with particular content so that consumers have the information they need to exercise their right to reinstate. *Id.* When incomplete notice is provided, many consumers lose this right altogether because they do not have the information they need to calculate how much to pay—even though creditors have that information easily at hand. See *Juarez, supra*, 152 Cal.App.4th at 897, 905–06. An incomplete NOI also "makes it more difficult" for consumers to act, and "effectively reduces the time the [statute] provides to buyers to remedy any defaults," because consumers are often forced to contact their creditors for more information about how much to pay. *Id.* at p. 906. Consumers are then left to their creditors' mercy: creditors may evade consumers' calls, refuse to answer, or give incorrect answers. *Id.*

Because adequate notice is essential to Rees-Levering's statutory scheme, if a creditor fails to send proper notice, the consumer is not liable for any subsequent deficiency. Civil Code §§ 2983.2 (a), 2983.8(b). As the California Supreme Court explained in *Lallana, supra*, 19 Cal.4th at 215: "The rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not

11

obey the law, he may not have his deficiency judgment." As with the Commercial Code, the customer need not to show prejudice for the absolute bar rule to apply.

### 3. Rees-Levering's Requirements for NOIs

Civil Code § 2983.2(a) expressly provides that the customer "shall be liable for any deficiency after disposition of the repossessed or surrendered motor vehicle *only if* the notice prescribed by this section is given…." Civil Code § 2983.2(a), italics added. It then lists nine separate requirements for inclusion. See Civ. Code §§ 2983.2(a)(1)-(9).

Civil Code § 2983.2(a)(2) requires an NOI to "[s]tate[] either that there is a conditional right to reinstate the contract until the expiration of the 15 days from the date of giving or mailing the notice *and all the conditions precedent thereto* or that there is no right of reinstatement and provide[] a statement of reasons therefor." Civil Code § 2983.2(a)(2), italics added.

If required information is omitted, the NOI is defective and the defaulting customer owes no deficiency. The statute is clear: the customer is not liable for the deficiency if the creditor failed to send a code-complaint NOI.

### 4. The Meaning of "All the Conditions Precedent" in Civil Code § 2983.2(a)(2)

The California Supreme Court has not construed the meaning of § 2983.2(a)(2). Thus, the decisions of the California Courts of Appeal guide the analysis. E.g. *Batlan v. Bledsoe*, 569 F.3d 1106, 1110 (9th Cir.2009) ("In the absence of a pronouncement by the highest court of a state, [federal courts] must follow the decision[s] of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently").

In *Juarez, supra*, 152 Cal.App.4th 889, the Court of Appeal construed § 2983.2(a)(2) carefully and comprehensively. The central issue there was the meaning of the term *all the conditions precedent* as used in Civil Code § 2983.2(a)(2). The Court of Appeal concluded that the Legislature used this term because it "intended that creditors provide sufficient information to defaulting buyers to enable them to determine precisely

12

what they must do to reinstate their contracts, including stating the amounts due, to whom they are due, the addresses and/or contact information for those parties, and any other specific actions the buyer must take."

The *Juarez* court explained in detail why the statute must be construed in this manner. It is the only construction that will effectuate the Legislature's intent. Considering that statutes should be interpreted to promote rather than defeat the legislative purpose and policy, the Legislature intended the NOI to "provide a level of specificity as to the conditions precedent to reinstatement sufficient to inform the buyer—without need for further inquiry—as to exactly what the buyer must do to cure the default." *Id* at 904.  The court explained the detail that is required in the NOI.

> [T]he statute requires that a creditor inform the buyer of any amounts the buyer must pay to the creditor and/or to third parties, and provide the buyer with the names and addresses of those who are to be paid. The creditor must also inform the buyer regarding any additional monthly payments that will come due before the end of the notice period, as well as of any late fees, or other fees, the amount(s) of these additional payments or fees, and when the additional sums will become due. If the creditor does not provide the defaulting buyer with this information, the creditor has not informed the defaulting buyer of "all the conditions precedent" to reinstatement of the contract.

*Juarez* , *supra* at 904-5.

In *Juarez*, the finance company had argued that its NOI, which instructed the customer to telephone the finance company for specific information, was sufficient. The Court disagreed. That interpretation would place the burden on the consumer to gather sufficient accurate information as to how to reinstate. As is true here, the finance company already knew or could readily obtain the relevant information concerning the conditions precedent for reinstatement. The customer would be unfamiliar with the process and would not have access to all the required information. Requiring the customer to collect that information by contacting the finance company and/or by gleaning it from other sources would place a significantly greater burden on the customer than would be placed on the finance company by requiring it to disclose that information in writing at the beginning of the process. *Id*. at 905. Placing the burden of collecting the information on the consumer makes it more difficult for the consumer to reinstate. It

13

reduces the amount of time the consumer has to fulfill the conditions by requiring the consumer to spend the limited time he has to reinstate tracking down the relevant information. *Id.*

The *Juarez* court also noted that unless § 2983.2(a)(2) was construed to require the finance company to provide detailed specific information as to exactly what was required in order to reinstate, it would *never* be required to inform the customer of what he must do to reinstate, even if he called or wrote asking about that information. This is because the *only* requirement Rees-Levering imposes on creditors concerning their duty to notify a customer about reinstatement is the notice provision in § 2983.2(a)(2). *Id.* at 907. If the NOI does not require a listing of the specific conditions of reinstatement, then a buyer would never have the right to be told precisely how much to pay in order to reinstate. *Id.*

Two cases decided by the California Courts of Appeal last year confirm *Juarez's* holding that a NOI must state "the amounts due, to whom they are due, the addresses and/or contact information for those parties." *Arguelles-Romero v. Superior Court,* 184 Cal.App. 825, 830 (2010); *Salenga v. Mitsubishi Motors Credit of America, supra,* 183 Cal.App. 4th 986 (same).

Also last year, Judge Wanger of the Eastern District of California granted summary judgment for plaintiff as to his contention that defendant's NOI was deficient in *Mora v. Harley-Davidson Credit Corp.*, 2010 WL 4321602 (E.D.Cal. 2010). Following *Juarez*, the court found that defendant's NOI violated § 2983.2(a)(2) because it failed to include the correct amount of repossession fees owed, failed to include the amount of law enforcement fees owed, failed to identify the third parties to whom such fees were owed, and failed to provide contact information such third parties. See *Mora, supra*, 2010 WL 4321602 at *8.

Here, the NOI that GMAC sent Mr. Wright does not include "all the conditions precedent" to reinstatement. The NOI is therefore defective and unlawful pursuant to Civil Code § 2983.2(a)(2).

14

## C. GMAC Engaged in Unlawful Business Practices

Mr. Wright contends that GMAC violated the UCL because (i) GMAC's sent him an NOI that contains insufficient reinstatement information to comply with Civil Code § 2983.2(a)(2); (ii) GMAC demanded and collected money from him on its deficiency claim when he was not liable for the deficiency; and (iii) GMAC reported the invalid deficiency claim to credit bureaus as a charge-off.

### 1. Mr. Wright Has UCL Standing

Since the passage of Proposition 64, the UCL has required plaintiffs to demonstrate that they "lost money or property as a result of such unfair competition." Bus. & Prof. Code § 17024. Mr. Wright alleges two forms of loss of money or property resulting from GMAC's illegal business practices: first, by his payment of money, as wrongfully demanded by GMAC; second, because GMAC has reported the deficiency as a charge-off to the credit reporting agencies.

The plain import of the "lost money or property" requirement is that "a plaintiff now must demonstrate some form of economic injury." *Kwikset Corp. v. Superior Court*, 51 Cal 4th 310, 323 (2011). The payment or loss of money is a classic form of injury in fact. *Id.* "But the economic injury that an unfair business practice occasions may often involve a loss by the plaintiff without any corresponding gain by the defendant, such as, for example, a diminishment in the value of some asset a plaintiff possesses." *Id*. at 336.

Here, GMAC pursued Mr. Wright for a deficiency he does not owe and he paid money in response to GMAC's demand for payment. He has UCL standing for the same reasons that the California Supreme Court ruled that cross-complainant Gonzalez had standing in *Fireside Bank v. Superior Court*, 40 Cal.4th 1069 (2007), under nearly identical facts: There, after Gonzalez defaulted on her conditional sale contract, Fireside Bank repossessed her vehicle. Because of a computer error, Fireside's NOI overstated the redemption sum. Fireside sued her to collect the deficiency and she filed a UCL class action cross-complaint similar to Mr. Wright's complaint here. Fireside sought a writ to

15

vacate the trial court's order certifying the class and argued that Gonzalez lacked standing under the UCL. The California Supreme Court rejected that argument:

> Gonzalez has standing. She, like other members of the putative class, was subjected to the same alleged wrong: deprivation of a fair opportunity to redeem the financed vehicle, followed by an unlawful demand for payment. The record demonstrates Fireside Bank repossessed Gonzalez's vehicle and pursued a deficiency judgment against her. She thus has standing to seek a declaration that Fireside Bank is unlawfully asserting a debt against her, as well as an injunction against all further collection efforts. The record further shows Gonzalez (or someone on her behalf) made a postrepossession payment against the alleged deficiency; upon proof she made that payment, Gonzalez also has standing to seek restitution.

*Fireside Bank, supra* at 1090.

In addition to losing money resulting from GMAC's payment demand, Mr. Wright has suffered credit damage. GMAC has been reporting its deficiency claim as a charge-off on his credit report. Wright dec., ¶ 11. GMAC's charge-off has damaged Mr. Wright both because is viewed as a "major derogatory" which adversely affects his FICO score and because the charge-off, which indicates unresolved debt, generally halts any application for credit. See Hendricks dec., ¶ 3. Mr. Wright has tried to purchase another car but has been unable to secure financing due to GMAC's deficiency on his credit report. Wright dec., ¶ 12.

The courts that have considered the issue agree that derogatory information on a credit report is economic damage. In *White v. TransUnion*, 462 F.Supp.2d 1079, 1084 (C.D.Cal.2006), a UCL case, the court held "[t] he perpetration of Credit Reports containing inaccurate erroneous information regarding "due and owing" debts is a sufficient injury to grant Plaintiffs [UCL] standing." Accord, *Aho v. AmeriCredit Financial Services, Inc*., 2011 WL 2292810, *2 (S.D. Cal. 2011) (denying defendant's motion for summary judgment on grounds of lack of UCL standing in light of plaintiff's assertion that defendant's reporting of the deficiency to credit reporting agencies damaged his credit report). The Ninth Circuit recently cited *White* with approval, agreeing that damage to credit was loss of money or property, in *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010). Accord, *Velasquez v. Chase Home Finance LLC*, 2010 WL 3211905, *7, n.6 (N.D.Cal. 2010) ("Examples of loss of money or

16

property sufficient to confer standing under the UCL include allegations of damage to a consumer's credit score.")

### 2. GMAC Sent Mr. Wright an NOI That Did Not Inform Him of "All the Conditions Precedent" to Reinstatement As Civil Code § 2983.2(a)(2) Requires

The facts are undisputed. The NOI that GMAC sent to Mr. Wright did not contain a level of detail sufficient so he would know—without the need for further inquiry—exactly what he had to do in order to reinstate. To the contrary, as demonstrated here, because GMAC's NOI lacked critical information for reinstatement, Mr. Wright needed to get more information from GMAC or elsewhere, as to (i) the amounts coming due between the date of the NOI and the deadline for reinstatement, that GMAC required to be paid but were not disclosed in the NOI; (ii) GMAC's requirement that he pay a $75 redemption fee and a $23 inspection fee to unspecified third parties, none of which were disclosed in the NOI; (iii) the amount of the fee that he was required to pay to local law enforcement, as well as the contact information for the San Bernardino Police Department; (iv) GMAC's physical address for sending his reinstatement payment by overnight delivery or personally serving his extension request.

Because GMAC's NOI did not comply with the requirements of § 2983.2(a)(2), the NOI was unlawful and violated the UCL. Mr. Wright is not liable for GMAC's deficiency claim.

### 3. GMAC Demanded Money From Mr. Wright Based on Its Invalid Deficiency Claim

Following GMAC's repossession and sale of Mr. Wright's vehicle, GMAC sent him a demand letter for the deficiency, and Mr. Wright made a partial payment. Wright dep. at 65: 16- 66: 10; 66: 23-24; 67: 2-19; Wright dec. at ¶¶ 9-10 and Exhibits C and D thereto. Because GMAC's NOI did not comply with the requirements of § 2983.2(a)(2), Mr. Wright was not liable for the deficiency, and GMAC's payment demand was therefore unlawful. GMAC's payment demand and collection of money from Mr. Wright violated the UCL.

17

**4.      GMAC Engaged in Unlawful Business Practices by Furnishing Credit Bureaus with Information It Knows or Should Know Is Inaccurate**

Civil Code § 1785.25(a) prohibits GMAC from furnishing information to consumer credit reporting agencies that it knows, or should know, is inaccurate. The NOI that GMAC sent to Mr. Wright did not comply with Civil Code § 2983.2(a)(2). GMAC is continuing to report the charge-off of Mr. Wright's alleged deficiency to the credit bureaus. Because GMAC's NOI violated Rees-Levering, Mr. Wright is not obligated to pay the deficiency and GMAC's report of the charge-off is inaccurate.

GMAC's attorneys have been litigating cases similar to this one for many years. They handled *Fireside Bank, supra*, 40 Cal.4th 1069, *Juarez, supra*, 152 Cal.App.4th 889 and *Salenga*, *supra*, 183 Cal.App.4th 986. Thus, it is logical to assume that GMAC should have known that continuing to report the charge-off of Mr. Wright's deficiency to the credit bureaus was not accurate, because GMAC's NOI did not include "all the conditions precedent" to reinstatement. But regardless of when GMAC knew or should have known that Mr. Wright was not liable for its deficiency claims, it will learn that now if the Court issues a declaratory judgment in Mr. Wright's favor. At that point it would be appropriate and necessary to find that continued reporting of GMAC's claim against Mr. Wright to the credit bureaus would violate Civil Code § 1785.25(a) and to enjoin such activity pursuant to the UCL.

**D. Mr. Wright Is Entitled To Declaratory Relief**

Mr. Wright's complaint also seeks declaratory relief in addition to relief under the UCL. GMAC is still reporting its deficiency claim to the credit bureaus, so it plainly contends that its deficiency claim against Mr. Wright is valid and enforceable. Mr. Wright contends that GMAC's deficiency claim is invalid because its NOI does not comply with Rees-Levering. Mr. Wright asks the Court to enter judgment declaring that he is not obligated to pay GMAC any deficiency because its NOI does not comply with Civil Code § 2983.2(a)(2).

///

///

18

## IV.   CONCLUSION

For the foregoing reasons, plaintiff Roderick Wright requests the Court to enter summary judgment in his favor. The Court should enter declaratory judgment holding that GMAC's deficiency claim against Mr. Wright is invalid because GMAC failed to send him a proper NOI as required by Civil Code § 2983.2(a)(2).

Additionally, plaintiff asks the Court to find that GMAC has violated the unlawful prong of the UCL by (i) sending him an NOI that does not satisfy the requirements of §§ 2983.2(a)(2); (ii) by unlawfully demanding and collecting payment from him, as he is not liable for the deficiency;  and (iii) by reporting its deficiency claim to credit reporting agencies when it knows or should know that its claim is inaccurate and invalid. He asks the Court to enter an injunction requiring GMAC to cancel his obligation to pay the deficiency and to clear his credit report of the charge-off of its deficiency claim. Finally, he asks the Court to enter an order requiring GMAC to disgorge the money Mr. Wright paid on its invalid deficiency claim.

Dated June 22, 2011

Anderson, Ogilvie & Brewer LLP

By:   */s/ Carol McLean Brewer*
Carol McLean Brewer
Attorney for plaintiff Roderick Wright

19