**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RODERICK WRIGHT,<br><br>                      Plaintiff,<br>vs.<br><br>GENERAL MOTORS ACCEPTANCE CORPORATION,<br><br>                      Defendant. | CASE NO. 09cv2666 JM(AJB)<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

      Plaintiff Roderick Wright ("Wright" or "Plaintiff") moves for summary judgment against Defendant Ally Financial Inc., formerly known as GMAC, erroneously sued as General Motors Acceptance Corporation ("Ally" or "GMAC"), on his claims for declaratory and injunctive relief under California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 et seq. ("UCL"). GMAC separately moves for summary judgment. All motions are opposed. Pursuant to Local Rule 7.1(d)(1), this matter is appropriate for decision without oral argument. For the reasons set forth below, the court concludes that Plaintiff lacks standing under Proposition 64 to bring this action. Accordingly, the court grants summary judgment in favor of GMAC and against Plaintiff. The Clerk of Court is instructed to close the file.

**BACKGROUND**

      On November 25, 2009 Ally removed this action from the Superior Court of California, County of San Diego, pursuant to the Class Action Fairness Act, 28 U.S.C. §§1332(d)(1453(b). (Ct. Dkt No. 1). Ally, the successor in interest to GMAC, is in the business of purchasing and servicing

retail installment sales contracts ("RISCs") for motor vehicles that it acquires from dealers in California." (Compl. ¶2).

On April 6, 2007 Plaintiff purchased a motor vehicle for personal use from a dealer in California. (Compl. ¶6). The sale was made pursuant to a RISC. About two years later, Plaintiff defaulted on the loan and, in July 2009, Ally repossessed the vehicle.

On July 17, 2009 Ally provided Plaintiff with a Notice of Intent ("NOI") informing him that it intended to sell the car. Plaintiff testified that he received this NOI after August 7, 2009. (Kemp Decl. Exh. C 55:16-569). The NOI also informed Plaintiff that he had the right to reinstate his contract by paying the delinquent charges and reasonable expenses or redeem the vehicle by paying the entire contract balance. (Kemp Decl. Exh. C). The car was sold at auction in October 2009 and the sale proceeds were applied to the balance of loan, resulting in a deficiency of $9,694.43. Subsequently, Ally sought to collect on the deficiency and reported the deficiency to the credit bureaus. Four days before commencing this lawsuit, Plaintiff made a $25 payment to Ally on the deficiency claim.[1]

In broad brush, Plaintiff alleges that the NOI provided by Ally did not comply with the Rees-Levering Automobile Sales Finance Act, Civil Code §§2981 et seq. Plaintiff alleges that the failure to comply with Rees-Levering results in the invalidity of Ally's deficiency claims. Plaintiff alleges that this conduct violates the UCL. Plaintiff seeks equitable relief, including the return of monies paid by him after the repossession of his vehicle ($25) and the cancellation of any potential deficiency claims.[2]

The Alleged Defective NOI

Plaintiff identifies that the NOI was defective because the NOI did not disclose all costs required to reinstate the loan. Specifically, Plaintiff argues that the NOI failed to disclose (1) the amounts due after the date of the NOI (the NOI only stated that the amounts identified were due "as

///

---

[1] From the evidentiary record before the court, it does not appear that GMAC has commenced an action against Plaintiff to collect the deficiency.

[2] On October 16, 2009 Plaintiff made a $25 payment towards the debt.

1  of the date of this letter[3]"); (2) the $75 redemption fee (charged by the auto auction or repossession agent for handling the paperwork and returning the vehicle to the customer); (3) a $23 inspection fee (the cost to have a third party vendor inspect the vehicle's condition); (4) a $15 statutory fee (the statutory fee must be paid to the police or sheriff's office where the repossession was reported); and (5) the NOI did not include a physical address. (Plaintiff's Motion at 5:14 - 8:4; Wright Decl. Exh B).

## DISCUSSION

**Legal Standards**

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th Cir. 2005). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials <u>negating</u> the opponent's claim." Id. (emphasis in original). The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

The court must examine the evidence in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Any doubt as to the existence of any issue of material fact requires denial of the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). On a motion for summary judgment, when "'the <u>moving party</u> bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.'" Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (emphasis

---

[3] In light of the time-value of money, the outstanding balance changed daily.

1 in original) (quoting International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992)).

**The UCL Claim**

The UCL, Bus. & Prof. Code §17200, prohibits three types of wrongful business practices: any (1) unlawful, (2) unfair, or (3) fraudulent business practice or act. "[I]n essence, an action based on Bus. & Prof. Code §17200 to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, when committed pursuant to a business activity, as unlawful practices independently actionable under Bus. & Prof. Code §17200 and subject to the distinct remedies provided thereunder." People ex rel. Bill Lockyer v. Fremont Life Ins. Co., 104 Cal.App.4th 508, 515 (2002). The violation of almost any federal, state, or local law may serve as the basis for a UCL claim. Saunders v. Superior Court, 27 Cal.App.4th 832, 838-39 (1994). Here, Plaintiff alleges that GMAC's failure to comply with the Rees-Levering Act is a violation of the UCL.

Before addressing the underlying predicate Rees-Levering disclosures, the court turns to GMAC's argument that Plaintiff lacks standing under Proposition 64 to bring the UCL claim.

Standing Under Proposition 64

The California Legislature framed the "UCL's substantive provision in 'broad, sweeping language,' [] and provided 'courts with broad equitable powers to remedy violations.'" Kwikset Corp. V. Superior Court, 51 Cal.4th 310, 320 (2011) (citations omitted). In explaining the impact of Proposition 64 on the scope of those individuals with standing to assert a UCL claim, the California Supreme Court stated:

> In 2004, the electorate substantially revised the UCL's standing requirement; where once private suits could be brought by 'any person acting for the interests of itself, its members or the general public' (former § 17204, as amended by Stats.1993, ch. 926, § 2, p. 5198), now private standing is limited to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition (§ 17204, as amended by Prop. 64, as approved by voters, Gen. Elec. (Nov. 2, 2004) § 3; (citations omitted). The intent of this change was to confine standing to those actually injured by a defendant's business practices and to curtail the prior practice of filing suits on behalf of ' "clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant...." ' ( Californians for Disability Rights, at p. 228 [46 Cal.Rptr.3d 57, 138 P.3d 207], quoting Prop. 64, § 1, subd. (b)(3).) While the voters clearly intended to restrict UCL standing, they just as plainly preserved standing for those who had had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices. (Prop.64, § 1, subds. (b), (d); see § 17204.)

1  id. at 320-21 (quoting Clayworth v. Pfizer, Inc. 49 Cal.4th 758, 788 (2010)).  The Supreme Court
2  noted that standing under the UCL is narrower than standing under article III, section 2 of the United
3  States Constitution, "which may be predicated on a broader range of injuries."  Id. at 324.  UCL
4  specifically requires the "injury in fact" to involve "lost money or property."  Id.  "[T]he quantum of
5  lost money or property necessary to show standing is only so much as would suffice to establish injury
6  in fact" under the federal inquiry."  Id.  Moreover, Proposition 64 requires that the economic injury
7  "come 'as a result of' the unfair competition."  Id. at 326.

8  GMAC argues that Plaintiff cannot show that he suffered an economic injury cognizable under
9  the UCL or that such injury was the result of any violation of Rees-Levering.  In large part, GMAC
10 argues that the $25 payment on the deficiency, made four days before commencing this action, was
11 not "as a result of" any alleged unlawful conduct by GMAC.  Rather, the payment was a self-serving
12 act  to manufacture standing to show "lost money" for purposes of the UCL claim.  See Brankson v.
13 Americredit Financial Services, Inc., 2011 WL 89730 (N.D. Cal. 2011) ($25 payment is not the result
14 of any alleged unlawful conduct but made solely to manufacture standing to bring a UCL claim with
15 the alleged Rees-Levering violation as a predicate for the UCL claim).  In reaching its conclusion that
16 the $25 payment was made for purposes of establishing standing, the district court relied, in part, on
17 evidence showing that plaintiff "had no intention of satisfying her debt to [the creditor] and knew
18 when she sent the $25 check that it would not satisfy the terms of" the creditor's proposed settlement."
19 Id. at *6.  Further, "plaintiff sent her $25 check only after her consultation with Plaintiff's counsel -
20 and only two weeks before filing this lawsuit."  Id.

21 Here, although a close call, the court concludes that no reasonable trier of fact could conclude
22 that the $25 payment was made "as a result of" the technical violations of Rees-Levering alleged by
23 Plaintiff.   The economic injury required by Proposition 64 "is substantially narrower than federal
24 standing under article III, section 2 of the United States Constitution, which may be predicated on a
25 broader range of injuries."  Id. at 324.  The evidentiary record shows that Plaintiff made the $25
26 payment not to reinstate the contract, but on account of the deficiency (Plaintiff testified that he
27 received the NOI after his right to reinstate had expired, Wright Depo. 55:16-56-9, Compl. ¶14;
28 "Plaintiff has UCL standing because he paid $25 on the deficiency;" Plaintiff's Oppo. at p.11:8;

"Wright does not claim that he lost money because he tried to reinstate and was unable to do so." p.11:23-24).

On October 16, 2009, at the time of forwarding the $25 payment to GMAC, the amount of the deficiency was at least $9,694.43.[4] In September 2009, Plaintiff spoke with several attorneys, including an attorney who previously represented Plaintiff in a prior lawsuit who then referred Plaintiff to one of his present counsel. (Wright Depo. 35:15-37:7). Plaintiff retained his current counsel on October 20, 2009. When asked whether Plaintiff disputed that he owed any deficiency, Plaintiff testified that he "didn't feel like I owed GMAC. GMAC never gave me the chance to get the car back in the first place (this testimony refers to the late receipt of the NOI after the 20 day reinstatement period of Rees-Levering)." (Wright Depo. at p.63:20-23). Plaintiff made the $25 payment because, in the NOI, "GMAC was asking for money," (Wright Depo. at p.66:24), "so I just sent them $25 to see what else they were going to send me back. And then nothing. No phone call. No letter. No nothing." (Wright Depo. at p.67:4-7). There is no evidence in the record that Plaintiff reasonably believed that the $25 payment somehow satisfied the deficiency or that the payment was made as "the result of" any alleged misrepresentation or omission contained in the NOI. In essence, Plaintiff testifies that GMAC was demanding a deficiency payment of $9,694.43 but Plaintiff sent GMAC a <u>de minimus</u> and insignificant $25 because they were "asking for money." The evidentiary record fails to establish the requisite causal connection between the alleged statutory violation and any loss of money or property.

The court concludes that the $25 payment, the reporting of the deficiency to credit reporting agencies, and Plaintiff's efforts to pursue cancellation of the alleged deficiency are insufficient to establish standing under the UCL. While these arguments may be sufficient to establish standing under Rees-Levering, Plaintiff has chosen not to pursue a claim under Rees-Levering. The court notes that the burden to establish standing under the UCL, pursuant to Proposition 64, is more restrictive than under Rees-Levering. <u>Kwikset Corp.</u>, 51 Cal.4th at 320. Plaintiff simply fails to identify any evidence or testimony that his economic injury was either the result of the allegedly defective NOI

---

[4] In light of the time-value of money, the Deficiency Letter informed Plaintiff that the total charge would "change because of additional interest accruing after the date of this letter." (Kennedy Exh. C).

or that the payment was made for any reason other than simply to manufacture standing under UCL. See In re Tobacco II Cases, 46 Cal.4th 298, 306 (2009) (holding "that a plaintiff 'proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance'"). Further, the record reveals that Plaintiff mailed the $25 check only after he consulted with an attorney and only four days before filing the present action. The payment is litigation-driven and appears to be the result of the UCL's standing requirement, and not as a result of any defect in the NOI.

Plaintiff argues that Fireside Bank v. Superior Court, 40 Cal.4th 1069 (2007), supports his standing argument. There, defendant Fireside Bank brought an action for a deficiency judgment based upon the plaintiff's alleged breach of the installment sales contract. The plaintiff pleaded Rees-Levering as an affirmative defense and subsequently brought a putative class action as a counterclaim, alleging claims for conversion, violation of the Rosenthal Fair Debt Collection Practices Act, and violation of the UCL. The California Supreme Court concluded that plaintiff had standing because "[t]he record demonstrates Fireside Bank repossessed Gonzalez's vehicle and pursued a deficiency judgment against her. She thus has standing to seek a declaration that Fireside Bank is unlawfully asserting a debt against her, as well as an injunction against all further collection efforts." Id. at 1090. Here, unlike in Fireside, GMAC has not pursued a deficiency judgment against Plaintiff.

Plaintiff also argues that the plaintiff in Fireside made a nominal $50 payment on the deficiency at issue and the trial court concluded this payment established standing. Fireside v. Gonzalez, Pre-Trial Order No. 3, 1-02-CV-817959 (Superior Ct. County of Santa Clara October 20, 2008); Ct. Dkt. 36-4). Plaintiff therefore concludes that his nominal payment here similarly suffices to establish standing under Fireside. The court concludes that Fireside is not particularly helpful to Plaintiff. Rees-Levering was directly at issue in Fireside because class plaintiff had asserted Rees-Levering as an affirmative defense to Fireside's claim for a deficiency judgment. In concluding that the Superior Court possessed standing, in the context of a motion for class certification, the trial court concluded that "the mere fact that Fireside Bank is pursuing a deficiency judgment against Lind is enough to give Lind standing to seek a declaration that Fireside is unlawfully asserting a debt against

1   her. More importantly, the fact that Lind's boyfriend made a post-repossession payment against the
2   alleged deficiency ($50), Lind also has standing to seek restitution." Id. at p.16:8-12. Here, there is
3   no affirmative defense or claim arising under Rees-Levering before the court. Further, unlike the
4   nominal payment on the deficiency made in Fireside, the court concludes that the litigation-driven $25
5   payment at issue here is the result of an effort to manufacture standing, and not the result of any
6   perceived misrepresentation or omission contained in the NOI or Deficiency Letter.

7   Finally, the court is also concerned that, by only alleging a UCL claim, Plaintiff is seeking to
8   use Rees-Levering as a sword, and not as a shield. Under the statutory scheme, Rees-Levering
9   provides consumers with a defense to deficiency judgments where the NOI contains
10  misrepresentations or omissions. A creditor may not seek a deficiency judgment from any consumer
11  if the disposition of the motor vehicle did not conform with the disclosure provisions of Cal. Civil
12  Code §2983.4. Aguayo v. U.S. Bank, 653 F.3d 912, 919 (9th Cir. 2011). Here, the parties do not
13  identify any evidence that GMAC has pursued a deficiency judgment against Plaintiff.[5] Furthermore,
14  while Plaintiff may be able to seek a declaration of his rights under Rees-Levering in an appropriate
15  forum, the court again notes that the single claim before the court arises under the UCL, and not Rees-
16  Levering.

17  In sum, as Plaintiff fails to establish that he has standing under Proposition 64 to pursue his
18  UCL claim, the court grants summary judgment in favor of GMAC and against Plaintiff, and dismisses
19  the claim. The Clerk of Court is instructed to close the file.

20  **IT IS SO ORDERED.**

21  DATED: January 25, 2012

22  _____
23  Hon. Jeffrey T. Miller
    United States District Judge

    cc:     All parties
24
25
26
27
---
28   [5] In the event GMAC seeks a deficiency judgment, the court notes that the present order does not prevent Plaintiff from raising Rees-Levering as an affirmative defense.